Mr. Chief Justice Alvey
delivered the opinion of the Court:
In the course of the trial there were several exceptions noted on the part of the. accused, to the admissibility of evidence offered in support of the prosecution. And upon these exceptions, there are three errors assigned by the appellant, viz:
1st. In admitting the testimony of Bertha Crown in regard to a threat made by the accused upon her life, and in refusing to strike out such testimony upon motion' of appellant.
2d. In admitting testimony of witness Grant as to what he heard Bertha Crown say at the time of the tragedy; and,
3d. In permitting the witness Grant to testify in regard to the relations that existed between the accused and Bertha Crown.
1 and 3. The first and third of these assignments of error may be considered together, as they both depend for their decision upon the same general principle of evidence.
The evidence objected to and made the subject of these two assignments of error, was offered for the purpose of showing the state of mind of the accused in respect of the girl Bertha Crown, and the motive that actuated him in making the deadly assault upon the deceased. In other words, for the purpose of showing his strong passion for the girl, and his violent jealousy of all other men who paid her attention, or for whom she- showed a preference to the accused in his suit for her favor.
The exception upon which is founded the first assignment of error, shows that the witness Bertha Crown, in testifying for the prosecution, was asked to state what had occurred *328 between herself and the accused, on a certain occasion, and in reply to which she said: “After I came out I had a basket, and he wanted me to let him carry it, and I said, ‘No, I came for it and I will go back with it.’ So when I got half way home he jerked me by the back of my head and said, ‘Are you going to let me carry this ? ’ He said, ‘ Come with me,’ and I said, ‘ No, I won’t.’ Then he said if I would go home and tell them all that he had followed me, that he would take my life. He said also that if' I spoke to Mr. Floyd that he would take my life.” This was about eight o’clock at night, on or about October 1, 1899, according to the recollection of the witness.
To the admissibility of this evidence the accused, by his counsel, objected, and asked that it'be stricken out, and not allowed to go to the jury. But the court was of opinion, and so declared, that the proof furnished a circumstance that might throw light upon the motive of the accused, and for that purpose it would be admitted. But if, in the further progress of the case, it should appear to be immaterial, it would be rejected. The exception, however, was insisted upon, and was accordingly noted.
In regard to the third assignment of error, and the exception upon which it is founded, that depends upon the same general principle as the first. The witness Grant testified that he understood that the defendant and Bertha Crown were engaged to be married; that the defendant asked witness “ to try and get Bertha to make up with him; ” and had told him, the witness, that he, the defendant, had had a similar trouble in Tennessee; that he was engaged to be married to a girl down there, and “an old son of a bitch had come in between them and parted them, like Floyd had him and Bertha.” And he said to witness, referring to Bertha and Floyd, “An old son of a bitch; if he don’t stop talking to her, I will kill him.”
This evidence, and that to which the first assignment of error relates, was clearly admissible, and the court below *329 did not err in so ruling upon the objections made to it. The motive that actuates a party to the commission of crime, especially that of murder, is always material, and is one of the first questions that present themselves in conducting an inquiry as to the perpetrator of the crime. In the proof of motive, it is not always feasible to produce positive and direct evidence; and hence any circumstance, though apparently slight in itself, that tends to throw light upon any material fact involved in the commission of the crime, or which tends to explain the conduct of the party accused, is properly admissible for that purpose. There are many cases, especially cases of homicide, in which much greater latitude is permitted, and evidence is allowed to be given of the conduct of the accused on other occasions, than that of the actual commission of the crime, where it has no other connection with the charge under inquiry than that it tends to throw light on what were his motives and intentions in doing the act with which he stands charged. Of course, as said by Roscoe, in his work on Criminal Evidence, Vol. 1, p. 140, “ This can not be done merely with the view of inducing the jury to believe that because the prisoner has committed a crime on one occasion, he is likely to have committed a similar offense on another; but only by way of anticipation of an obvious defense; such as that the prisoner did the act of which he is accused, but innocently and without any guilty knowledge or intention; or that he did not do it, because no motive existed in him for the commission of such a crime, or that he did it by mistake. In these cases it is competent for the prosecutor to adduce evidence which, under the circumstances, would not be admissible; such as the conduct of the prisoner on other occasions, his admissions, and other surrounding circumstances, in order to show, as the case may require, either that his innocence was extremely improbable, or that he had motives of advantage or revenge for the commission of the crime, or that it was improbable he should make a mistake.”
*330 This principle has been very clearly stated and adopted by the Supreme Court of the United States, in the recent case of Moore v. United v. States, 150 U. S. 57, 60, 61. That was a case of murder, and the party accused was convicted. There it was held, that when the tendency of evidence offered in a criminal case is to throw light upon a particular fact, or to explain the conduct of the party accused, there is a certain discretion on the part of the trial judge in admitting such evidence which a court of errors will not interfere with, unless it manifestly appears that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors. The court cite and quote from the case of Hendrickson v. People, 10 N. Y. 13, 31, where it is said by the court that “ considerable latitude is allowed on the question of motive. Just in proportion to the depravity of the mind would a motive be trifling and insignificant which prompted the commission of a great crime. We can never say the motive was adequate to the offense, for human minds would differ in their ideas of adequacy, according to their own estimate of the enormity of the crime, and a virtuous mind would find no motive sufficient to justify the felonious taking of human life.” And for cases of like principle, see Sharter v. Bumstead, 99 Mass. 112, 130 ; Comm. v. Coe, 115 Mass. 481, 504; People v. Harris, 136 N. Y. 423; Comm. v. Abbott, 130 Mass. 472.
In this ca.se, it is manifest that the accused was very strongly affected with a passion for the girl Bertha Crown, and he entertained a violent jealousy of all others who paid her attention and whose attentions appeared to be favorably received. This passion of his seemed to have been quite uncontrolled by him; and as there was no other cause whatever for the assault upon the deceased, the clear inference is that he was instigated to the commission of the act by his violent jealousy and a desire to put a rival out of his way. The indulgence of such passion has led others to the *331 commission of similar crimes, and in the trial of which evidence of the previous conduct and declarations of the parties accused has been admitted in evidence against them, to show the object and motive of the crime. As illustrations of this, we have two notable cases, which were cited in argument,, that of Hunter v. State, 43 Ga. 483, and McGue v. Comm,., 78 Pa. St. 185; and doubtless others could be found.
2. The second assignment of error involves a different principle. The exception upon which that assignment of error is founded, was taken to the admissibility of certain declarations of Bertha Grown made at the time of the commission of the crime by the accused.
The witness Grant, called for the prosecution, was asked the question whether his attention was called to anything or trouble on the street, and his reply was, “Yes, by Bertha Crown.” He says he was up stairs in his room, and she, Bertha Grown, called to him, and said, “ Mr. Grant, come out here. Mr. McUin has knocked Mr. Turner in the head.” This evidence was objected to and formed the subject of an exception by the accused; but we think the evidence was clearly admissible upon two grounds. First, it was admissible as an implied admission by the accused; and, second, it was admissible as part of the res gestae.
In regard to the first ground of admission, the accused was present and must have heard the call of Bertha Crown to Grant to come down to the street, that McUin had knocked Turner in the head. Grant obeyed the call and at once came down to where the assault had occurred, and where the accused and Bertha Crown were with the deceased, the latter lying on the ground. The accused neither denied the fact that he had knocked the deceased in the head, at the time when Bertha Crown called up to Grant, nor after Grant had come down to where the parties were on the street. Having heard it charged that he had knocked the deceased in the head, and failing to deny the charge, it was, at least, some evidence of an implied admission on his part that the *332 charge had been truthfully made. Under the circumstances of the case, it is to be presumed, that, according to ordinary human experience, he would naturally have repudiated the charge, if it were not true. Comm. v. Antonio Tunai, 146 Mass. 570. The principle is, that where a statement is made either to a man, or within his hearing, that he was concerned in the commission of a crime, to which he makes no reply, the natural inference is that the imputation is well founded, or he would have repelled it. Best on Presump. 241; Whart. Crim. Ev. (8th Ed.), Sec. 679.
But the evidence was clearly admissible on the second ground, that of its being a part of the res gestae. It has been repeatedly ruled, that whenever the existence of a purpose, or state of mind, is-the subject of inquiry, explanatory conduct and accompanying expressions of the party himself, or of other persons to him or in his presence, may be shown as part of the res gestae. Schlemner v. State, 51 N. J. Law, 29. In the case of Hunter v. State, 11 Vroom, 495, it was held that the declarations of a third party explanatory of an act that was part of the res gestae were not hearsay, but were legitimate evidence. See, also, 1 Greenl. Ev., Sec. 108, and notes to that section.
We find no error in the rulings of the court below, and must therefore affirm the judgment; and it is so ordered.

Judgment affirmed.