PATRICK CRIMMINS *vs.* ARMSTRONG TRANSFER EXPRESS COMPANY.

Suffolk. January 29, 1914. — February 27, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* In use of highway.

If a traveller on foot, starting to cross a street at a cross walk, first looked to his left, where teams travelling on the right hand side of the street were to be expected, and then immediately looked to his right, and for the first time saw a two horse team coming at an excessive rate of speed only ten feet distant, and if, before he could get out of the way, he was struck by the horses, who had been turned to the left hand side of the street, when he still was within three or four feet of the curbstone from which he had started, he can be found to have been in the exercise of due care.

If the driver of a two horse team is driving at the rate of from twelve to fourteen miles an hour and is talking to a companion by his side, unmindful of the presence on the highway of a traveller on foot who is starting to cross the street at a cross walk ahead, and, instead of continuing in a straight course, by which he would avoid a collision with the traveller, allows the horses to swerve to the left and knocks down the traveller, these facts are evidence of the driver's negligence in an action against his employer for the injuries thus caused.

CROSBY, J. This is an action of tort to recover damages alleged to have been caused by the negligence of the defendant's servant.

The plaintiff, while a traveller upon a public street, was struck by a double team driven by the defendant's servant, and was

knocked down and run over.    The accident occurred between eight and nine o'clock in the evening of July 13, 1912, on Union Street in Boston.    The plaintiff started to cross the street upon the cross walk, and, to quote his own words, "As I stepped off the curbstone I looked to my left.    I thought if there were any teams coming they should be coming up on the right hand side. I made another step and looked to my right, and just as I looked there was this double team pretty near on top of me.    I couldn't tell exactly how fast it was coming, but it was coming pretty rapidly.    I should say the team was about ten feet away when I first saw it. . . . As I stepped off I looked to my left and I made another step and I looked to my right; this team was coming straight towards Faneuil Hall Market, and all of a sudden the horse steered right on top of me and I tried to back away and it caught me on the left shoulder and it knocked me down, and that is all until I came to again."    The plaintiff further testified that he was three or four feet from the curbstone when he was struck, and that when he saw the horses turn in on him he tried to back out but failed; that he could not get away, as the horses were coming so fast; and that the horse on his side "slewed into" him.

There was evidence to show that there were no other teams on the street in that vicinity at the time; that as this team approached the crossing, travelling in the same direction as the plaintiff, it made a great deal of noise and was heard by several persons near by before it reached the cross walk; but the plaintiff testified that he did not hear it or know of its presence until just before he was struck.    There was also evidence to show that just before reaching the cross walk the driver turned his team from the right to the left side of the street to avoid a crowd that had gathered in the street on the right side, and then proceeded on the left side within three or four feet of the curb where the plaintiff was struck; that the driver and another man were on the driver's seat, and as they came down the street they were talking and motioning to one another; and that the team was travelling at the rate of twelve or fourteen miles an hour.    If the jury believed this evidence they would be warranted in finding that the plaintiff was injured while in the exercise of due care, by reason of the negligence of the defendant's servant.    The plaintiff and the defendant had equal rights in the use of the highway; neither had an exclusive right

thereon, and each was bound to exercise his rights in such a manner as not negligently to injure the other. *McDonald* v. *Bowditch,* 201 Mass. 339. Ordinarily, where there is a collision between travellers upon a public way and injury results, it is a question for the jury upon conflicting evidence to determine which one is at fault. *Murphy* v. *Armstrong Transfer Co.* 167 Mass. 199. The mere fact that a person attempts to cross a street without looking is not conclusive evidence of want of due care. *Williams* v. *Grealy,* 112 Mass. 79. Where, as in this case, the undisputed evidence shows that the plaintiff was proceeding upon the cross walk provided for pedestrians and was struck by the defendant's team, it cannot be ruled as matter of law that he was careless in not looking in both directions or taking other precautions before starting to cross. If the jury believed his testimony it would appear that as he stepped off the curbstone he first looked to his left, which would be the side of the street where teams coming in his direction ordinarily would be travelling, and then he immediately looked to his right and for the first time saw the team coming on the left side of the street ten feet away, and he was struck before he could get out of the way.

While the team was rightfully being driven along the left side of the street, that fact was competent for the consideration of the jury in passing upon the conduct of the plaintiff. It is presumed that every traveller upon a public way will exercise due care to avoid injury to others; and, while the plaintiff was bound to use proper care himself, he had a right to rely upon this presumption to a certain extent, and it was for the jury to determine whether the plaintiff's failure to take further precautions rendered his conduct careless and contributed to his injury.

The jury could have found that the team would not have come into collision with the plaintiff if it had continued on a straight course, but that it was carelessly allowed by the driver to swerve to the left and strike him.

Upon the question of the defendant's negligence the jury could have found that the rate of speed was excessive; that the driver was talking with his companion and unmindful of the presence of the plaintiff upon the street, and was negligent in not seeing him and avoiding the accident.

Most of the cases cited by the defendant are against street rail-

way corporations where the danger of injury from electric cars is much greater as a rule than that from teams. As was said with reference to this class of cases by Knowlton, C. J., in *Donovan* v. *Bernhard,* 208 Mass. 181: "Most of them have been actions against street railways, where the risk from an approaching car is ordinarily much greater than that from a horse and carriage. In many of them the plaintiff knew facts or saw objects which put upon him a special duty to take some precaution which he neglected."

There is nothing in this case to distinguish it from many others in which this court has held that the usual questions of the plaintiff's due care and the defendant's negligence are for the jury. *Murphy* v. *Armstrong Transfer Co.* 167 Mass. 199. *Hennessey* v. *Taylor,* 189 Mass. 583. *Donovan* v. *Bernhard,* 208 Mass. 181. *Shipelis* v. *Cody,* 214 Mass. 452. The rulings requested could not have been given,* and, as the record shows that the case was submitted to the jury under suitable instructions, the entry must be

*Exceptions overruled.*

*H. F. Hurlburt, Jr.,* for the defendant.
*G. H. Mellen,* (*W. B. Keenan* with him,) for the plaintiff.

---

* The case was tried before *Brown,* J., who refused to rule that the plaintiff was not entitled to recover and that the plaintiff was not in the exercise of due care at the time of the accident and therefore was not entitled to recover. The defendant alleged exceptions.