GELARDINO DI RIENZO *vs.* JACOB GOLDFARB.

Worcester. September 27, 1926. — October 18, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Negligence,* Contributory, In use of highway, Motor vehicle. *Evidence,* Competency, Relevancy and materiality. *Witness,* Cross-examination. *Motor Vehicle,* Operation. *Practice, Civil,* Exceptions.

At the trial of an action by a boy fourteen and one half years of age for personal injuries received when he was run into by an automobile driven by the defendant, there was evidence that the street where the accident occurred ran east and west and was divided in the middle by a reserved space upon which street railway cars were run; that

ordinarily west bound automobiles did not travel on the southerly side of the reserved space; that the plaintiff, having looked toward the west and seeing no vehicle nearer than three hundred yards and not having looked toward the east, "because he did not expect automobiles could come from that direction," ran to cross the street in a northwesterly direction to pick up a baseball with which he and companions were playing, and that the defendant in his automobile, proceeding westerly at the rate of twenty miles an hour without sounding a horn, ran into him just before he reached the other side of that part of the street which was south of the reserved space.   The action was submitted to the jury upon the assumption that there was no municipal order or ordinance regulating traffic on the street in question.   *Held,* that

(1) It would not have been proper to rule that the plaintiff was·not in the exercise of due care by reason of the fact that he did not look toward the east before starting to cross the street;

(2) It would not have been proper to rule as a matter of law that negligence of the plaintiff contributed to cause his injury; that question was for the jury with the burden on the defendant to establish such defence;

(3) Whether the defendant was negligent was for the jury.

A person operating a motor vehicle upon a public way may be found to be lacking in due care if he fails to give a timely signal with his horn or other device at a place on the highway other than those specifically enumerated in the statute, if reasonable care on his part requires such signal to be given there to protect other travellers from being injured by him; and therefore, at the trial of the action above described, it was proper to refuse a request for a ruling that the defendant was not required to sound a horn or give any signal unless he was approaching an intersecting street or a pedestrian.

The following exceptions by the defendant, saved to rulings relating to evidence at the trial above described, were overruled:

(1) An exception to a refusal to strike from a narrative by a member of the State constabulary, who was a witness of the accident, the following: "The children looked toward you and then what?" "Started across the street.   I increased my speed to stop this car coming from the east, and as I —";

(2) An exception to the denial of a motion to strike from the testimony by the same witness the following statement: "Q. Then what did . . . [the defendant] do, if anything?   A. After I copied his license I took him with Officer Clifford to the police station in Worcester"; it not appearing that the defendant had been placed under arrest or that he did not voluntarily accompany the officer to the station for the purpose of reporting the accident;

(3) An exception to a ruling admitting a conversation between a police officer and the defendant shortly after the accident in which the defendant attempted to explain his method of managing his automobile on the occasion in question;

(4) An exception to the admission of a question in cross-examination of the defendant, "How long prior to" the date of the accident "had you driven a car" in the city in question? which the defendant answered, "Six years," the answer not being harmful to the defendant.

At the trial of an action for personal injuries received when the plaintiff
was run into on a street in a city by an automobile owned and operated
by the defendant, certain ordinances and traffic regulations of the city
were introduced in evidence, but it did not appear from the record that
any such regulation, order or ordinance was in existence at the time
of the accident. In his charge to the jury, the judge instructed them
that "after conferring with the attorneys in the case" he had "decided
to submit this case to the jury for its determination as an ordinary
highway case without regard to the orders, traffic orders and ordinances
that have been introduced here," and instructed them in their con-
sideration and determination of the rights and wrongs of the parties
to disregard "any traffic rules that have been presented to you and
discussed by attorneys to you." *Held*, that thus the case was sub-
mitted to the jury upon the assumption that there was no order or
ordinance regulating traffic on the street in question and that exceptions
by the defendant to the admission of evidence relating to orders and
traffic regulations and the refusal of requests by the defendant for
rulings as to their bearing upon the questions of negligence of the
parties became immaterial and must be overruled.

Tort for personal injuries caused when the plaintiff, a boy
fourteen and one half years of age, was run into by an auto-
mobile driven by the defendant on Shrewsbury Street in
Worcester. Writ dated August 21, 1923.

In the Superior Court, the action was tried before *Irwin*, J.
The witness Kell, referred to in the opinion, was a member
of the State constabulary and was an eyewitness to the
accident. He testified to having seen the defendant pro-
ceeding westerly on that part of Shrewsbury Street which was
south of the street car reservation. The record then stated
as to his testimony: "that there were two children on the
South curb that had started across the street; that 'two cars
had just gone by and they (the children) stepped off the
curb, and looked in the direction from which I was coming.'
Q. Go ahead, Mr. Kell, please. The children looked
toward you and then what? A. Started across the street.
I increased my speed to stop this car coming from the East,
and as I —" The defendant then interposed a motion that
the last answer be struck out, which was denied, subject to
his exception.

The defendant excepted to a denial of a motion to strike
out the following testimony of the witness Kell: "Q.
Then what did Mr. Goldfarb do, if anything? A. After I

copied his license I took him with Officer Clifford to the Police Station in Worcester."

The testimony of police officer Clifford excepted to by the defendant was as follows: "Q.   I am asking for the conversation with the defendant, just after the accident. . . . Telling me as near as you can the words that you used, and the words that Mr. Goldfarb used.   A.   I asked Mr. Goldfarb why he was on that side of the street.   He said he intended going over on the other hill.   That is what we call Grafton Hill, Grafton Street. . . . Q.   Did you have any talk with Mr. Goldfarb?   A.   I asked him why he was on that side of the street and he told me he was looking for some street that would take him over on the other hill that was across the railroad tracks. — Q.   Anything else?   A.   I told him he could see readily there was no street there. . . . — He said he did not know.   I asked him if he lived in the city of Worcester and he said yes."

Other material evidence is described in the opinion.   At the close of the evidence, the defendant moved in writing that a verdict be ordered in his favor.   The motion was denied.   The defendant then made sixty-two requests for rulings.   Those numbered 12-38 sought rulings as to the bearing upon the questions of negligence of the plaintiff and of the defendant of certain orders of the city and of street signs placed by the police.   As to the other requests, the defendant relied only on his exceptions to refusals by the trial judge to give the following:

"10.   The defendant was not required to sound any horn, or give any signal, unless he was approaching an intersecting street or a pedestrian, and if the jury finds that the defendant was not approaching an intersecting street and did not see or under the circumstances would not be expected to have seen a pedestrian, or should not have seen a pedestrian in the roadway, there was no obligation or duty on the part of the defendant to sound any horn or other signal.

"11.   Upon all the evidence there is no evidence of negligence on the part of the defendant."

"40.   It makes no difference how careless or negligent the defendant may have been, if the plaintiff also was not in the exercise of due care, he cannot recover."

"42. It is undisputed in this case, and the plaintiff has himself admitted that after a ball was rolled or thrown into the street the plaintiff held another boy with his right arm, and then himself ran into the street after the ball, immediately after two automobiles had passed, going in an easterly direction, and without looking to the right or in an easterly direction, and only looking to the left or in a westerly direction, and while running after that ball, collided with the automobile of the defendant.

"43. Upon all the evidence and the undisputed evidence offered by the plaintiff himself, such conduct on the part of the plaintiff is not the conduct of a reasonably prudent person, and the plaintiff was not in the exercise of due care and cannot recover."

"45. Upon all the evidence the plaintiff failed to exercise due care and he cannot recover."

"62. The plaintiff should have expected that vehicles might come from his right on the south side of Shrewsbury Street, and should have looked."

Portions of the charge by the judge to the jury relating to due care of the plaintiff were as follows: "Unless you find negligence in the conduct of the defendant then and there, you shall stop, go no further in your consideration of the case, and return a verdict for the defendant. Finding that he was careless in operating his car, you will then take up the evidence. Was the boy in the exercise of due care? There is no difference in the rules of law, broadly stated, between the conduct of an adult and a child. There is a period in young life when a child is not responsible for his own care, and then his care and guidance and protection devolves upon his guardian, father or mother. There is no question but that the plaintiff in this case was competent to care for himself in the public streets. He was fourteen and one-half years old at the time, or about that age. He was not then as you see him now, a boy of seventeen. Children are required to use only the care of a child, children's care. There is no hard and fast rule in the law as to when a child is deemed to be competent to take care of himself. Age alone is not conclusive of that. Some children are more

precocious than others in their youth, and I sometimes think the city children are better able to take care of themselves than country children, because they see more and have to do with more travel. They are required early in life to look out for themselves. Now, the question as to the plaintiff's care just before and at the time of the accident is to be considered with reference to his age, his experience in life, and his knowledge of the travel in the highway at that time and place. Did he look as a child would look and should look to observe where he was going, the condition he was running into? The testimony, as I recall it, in fact as I noted it, said he looked towards Washington Square, looked to the left as I recall it. 'Why didn't you look towards the Lake?' (That would be to the right.) 'Didn't expect automobiles to come from that direction.' It is for you to say what the evidence was, gentlemen. Now, was he in due care in pursuing the ball in the way of the evidence? The law makes some allowance for the excitement and impetuosity of youth. Did the boy act reasonably as a boy fourteen and one-half years of age at the time? If he did, he is entitled to the credit of having used due care. If he didn't, then you should stop right there and find a verdict for the defendant; because if a plaintiff's own negligence contributes to his hurt, he may not lay the blame on another. If both parties were careless, verdict should be for the defendant. If both of the parties were in due care, your verdict should be for the defendant, because it must appear that the plaintiff was injured by reason of the negligence of the defendant."

The defendant excepted "to the reference by the court that the plaintiff testified he did not expect any automobiles or traffic to come from the Lake; to the reference to the excitement and impetuosity of youth; to the statement of the court that the plaintiff was not then as you see him now, this following the statement as it will appear in the charge, relating to the boy's age; and to the court's expression, past, present and future impairment of the plaintiff."

There was a verdict for the plaintiff in the sum of $4,000. The defendant alleged exceptions.

The case was submitted on briefs.

*J. F. McGrath, J. J. MacCarthy, & F. T. Mullin,* for the defendant.

*J. H. Meagher, E. Zaeder, & J. L. Bianchi,* for the plaintiff.

CROSBY, J.   The plaintiff, a boy fourteen years old, was struck by an automobile driven by the defendant on Shrewsbury Street, in Worcester.   The street runs in an easterly and westerly direction, with double street car tracks in the centre of a reservation and an eighteen-foot cement highway on each side thereof.   The evidence tended to show that west bound automobiles travelled on the north side of the reservation, and those east bound travelled on the south side; also, that before the accident traffic regulations had been adopted by the city of Worcester.   Certain sections of these regulations were admitted in evidence, subject to the defendant's exception, but there is nothing in the record to show what those sections contained.   The plaintiff contended that the regulations provided that west bound traffic was confined to the highway north of the reservation and east bound traffic should pass on the south side, but it does not appear from the record that any such regulation, order or ordinance was in existence at the time of the accident.   Accordingly, the trial judge in his charge instructed the jury as follows: "Now, gentlemen, after conferring with the attorneys in the case, the court has decided to submit this case to the jury for its determination as an ordinary highway case without regard to the orders, traffic orders and ordinances that have been introduced here.   And so, gentlemen, you will disregard in your consideration and determination of the rights and wrongs of the parties in this case any traffic rules that have been presented to you and discussed by attorneys to you.   I hope you thoroughly appreciate the change that is made in that respect, and it is imposed upon you by the court to disregard whether or not the defendant was on the right [proper?] side of the travelled way of Shrewsbury Street or not, and to consider the case as though nothing had been laid before you in that respect."   The case was submitted to the jury upon the assumption that there was no order or ordinance regulating traffic on Shrewsbury Street.

The plaintiff testified in substance that he and two other boys were playing ball on the southerly sidewalk of the street south of the reservation; that the ball rolled over the curb and the plaintiff and a boy named Cattaccio walked to the curb to recover it; that two automobiles went by abreast of each other and the plaintiff held Cattaccio back and said he would go after the ball; that the plaintiff looked toward the west and, seeing that no automobiles were coming from that direction, ran across the street "always looking toward Washington Square" (toward the west) in the direction of the ball which was about three feet away from the car tracks, between the sidewalk which the plaintiff left and the outside rail of the east bound car track; that he stooped to pick up the ball and just as he got his hands on it "everything went black." There was evidence that the ball went diagonally across the sidewalk and street in a northwesterly direction. The plaintiff further testified that at no time did he look to his right; that the nearest machine coming toward him from his left was about three hundred yards away; that he did not look to his right because he did not expect automobiles could come from that direction.

There was evidence that the defendant's automobile was travelling in a westerly direction on the north side of the street located south of the reservation, at a speed of about twenty miles an hour; that no signal or horn was sounded; that the defendant was looking toward the side of the road at the side streets and signs; that he was on the south side of the reservation because he wanted to get to East Worcester Street which he understood connected with Shrewsbury Street on its south side; that the defendant's automobile was the only one on the southerly side of the street going in a westerly direction; that it travelled about seventeen or eighteen feet after striking the plaintiff before it stopped; and that it was daylight when the accident occurred.

The defendant offered evidence tending to show that the plaintiff ran from behind the two automobiles going in an easterly direction, and into the left front mudguard of the defendant's automobile, and that he was about two feet away when the defendant first saw him. Upon the entire

evidence it could not properly have been ruled that the plaintiff could not recover.

The question, whether the plaintiff was in the exercise of such care and prudence as an ordinarily careful boy of his age would be expected to exercise in attempting to cross the street in the circumstances disclosed, was for the jury. *Beale* v. *Old Colony Street Railway*, 196 Mass. 119. *Rasmussen* v. *Whipple*, 211 Mass. 546, 548. *Hennessey* v. *Boston Elevated Railway*, 211 Mass. 524. *Angelary* v. *Springfield Street Railway*, 213 Mass. 110.

It could not have been ruled that the plaintiff was not in the exercise of due care because he did not look to the right before starting to cross the street. *Crimmins* v. *Armstrong Transfer Express Co.* 217 Mass. 155, 157. He testified that "he did not look to his right . . . because he did not expect automobiles could come from that direction." There was evidence that ordinarily west bound automobiles did not travel on the southerly side of the reservation. This evidence was competent for the consideration of the jury in passing upon the plaintiff's conduct. His contributory negligence was an affirmative defence and the burden of proving it rested on the defendant. G. L. c. 231, § 85. *Daris* v. *Middlesex & Boston Street Railway*, 241 Mass. 580.

Whether the defendant was negligent was also a question of fact to be determined upon all the evidence, with the burden of proof resting upon the plaintiff. If, as the jury could have found, the defendant was travelling upon this city street where, as the evidence showed, there was a large amount of traffic, at a speed of about twenty miles an hour, without sounding a horn or giving any other signal of his approach, a finding of negligence on his part was not unwarranted. G. L. c. 90, § 17, provides that "No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public." *Rasmussen* v. *Whipple, supra.*

The defendant's tenth request that he was under no obligation to sound his horn as he was not "approaching an intersecting street or a pedestrian," G. L. c. 90, § 14, was

rightly refused. A person operating a motor vehicle upon a public way may be found to be lacking in due care if he fails to give a timely signal with his horn or other device, if reasonable care on his part requires such signal to be given to protect other travellers from being injured by him at places on the highway other than those specifically enumerated in the statute.

The cases cited by the defendant to show that the plaintiff was lacking in due care, and that there was no evidence of negligence on his part, are distinguishable in their facts from those which could have been found in the case at bar.

It remains to consider the exceptions to the admission and exclusion of evidence and to the rulings given and refused.

The witness Kell was asked in direct examination, "the children looked toward you and then what?" The answer was, "Started across the street. I increased my speed to stop this car coming from the east, and as I — ." The defendant excepted to the refusal of the trial judge to strike out the answer. The answer was responsive and the exception must be overruled.

The statement of the same witness that after taking the plaintiff to the hospital he returned to the scene of the accident and took the defendant to the police station, if not responsive, did not prejudice the substantial rights of the defendant. There was nothing to show that he had been placed under arrest, or that he did not voluntarily accompany the officer to the station for the purpose of reporting the accident.

Officer Clifford in his direct examination was asked by the plaintiff to relate a conversation which he had with the defendant shortly after the accident. This was admitted subject to exception of the defendant. The judge correctly ruled that the plaintiff was entitled to prove that conversation.

The exception to the admission of the testimony of the city clerk of Worcester respecting the adoption by the city of certain traffic regulations or ordinances became immaterial when the judge submitted the case to the jury "as an ordinary highway case without regard to the orders, traffic orders

and ordinances that have been introduced . . . ." The instructions given and hereinbefore referred to fully protected the rights of the defendant.

The question admitted in the cross-examination of the defendant, "How long prior to May 6, 1923, had you driven a car?" which was afterwards limited to the city of Worcester, if incompetent, did not harm the defendant, in view of the answer, which was, "Six years." *Lang* v. *Boston Elevated Railway*, 211 Mass. 492, is distinguishable from the present case. A similar question there was held incompetent and prejudicial as it was offered to show that the defendant was negligent. If, as the jury could have found from the answer, the defendant had driven a car for six years before the accident, it could hardly be contended by the plaintiff that he was incompetent or negligent because of inexperience.

The exceptions to the requests for rulings and to the charge may be disposed of briefly.

The defendant's exceptions to the refusal of the judge to give his requests 11 to 38, inclusive, cannot be sustained. Nearly all of them related to alleged violations by the defendant of certain city orders or ordinances; these instructions became inapplicable in view of the instructions given which directed the jury to disregard any evidence of such orders or ordinances, or their violation by the defendant. Requests 40, 43, 44, 45 and 62 were rightly refused. The instructions given were adequate and correct and fully covered the questions the jury were required to determine.

The testimony of the plaintiff that he did not expect any automobiles or traffic to come from the east was substantially in accord with his other testimony and was in explanation of his failure to look in that direction. It was admitted without exception and was competent, and the reference to it by the judge in his charge was not erroneous. The references in the charge to "the excitement and impetuosity of youth" and to the plaintiff's age at the time of the accident and at the time of the trial three years later were proper.

*Exceptions overruled.*