ALTHEA CORRAO *vs.* SEARS, ROEBUCK AND CO.

Suffolk.    April 7, 1937. — June 29, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Sale,* Installation by seller. *Agency,* What constitutes. *Negligence,* In installation of oil burner, Contributory. *Witness,* Expert.

Evidence warranted findings that the seller of an oil burner agreed to deliver it and install it and that one who delivered it and installed it was an agent of the seller.

Evidence warranted a finding of negligence on the part of one acting for the defendant in installing an oil burner purchased by the plaintiff under a contract requiring the defendant to install it and did not require as a matter of law a finding of contributory negligence on the part of the plaintiff, who was injured when the burner exploded as he was attempting to use it.

Generally, determination of the preliminary question, whether a witness offered as an expert is qualified as such, rests with the trial judge.

TORT.    Writ in the Superior Court dated December 11, 1931.

The action was tried before *Beaudreau,* J., who ordered a verdict for the defendant. The plaintiff alleged exceptions.

*O. Gallagher,* for the plaintiff.

*J. W. Black, Jr.,* for the defendant.

---

* There was evidence that at the time the plaintiff and his mother left Samuel Green's home, and on a later occasion, Samuel Green said to her that his promise for the plaintiff "still held good." — REPORTER.

QUA, J. The plaintiff rests her case upon alleged negligence of the defendant in the manner of installing an oil burner in the plaintiff's kitchen range. We think that she was entitled to go to the jury.

There was evidence that the defendant had advertised to sell, deliver and install such burners for $24.95; that the plaintiff purchased of the defendant one of the advertised burners for $15 down and her promise to pay the balance of $9.95 to the man who would come to deliver and install the burner; that "the manager told her he would send one of their own men to deliver and install it"; that the man who brought and installed the burner said he was "from Sears, Roebuck"; that the plaintiff paid him the $9.95, and he gave her a receipt headed, "Sears, Roebuck and Co. Boston, Mass." and signed "Leo Broderick"; and that the plaintiff never received any further bill from the defendant. This evidence would support findings that the defendant's undertaking included the installation of the burner and that the man who installed it and receipted for the balance of the purchase price was the servant of the defendant.

When the burner was installed this man gave the plaintiff directions as to how it should be used. The plaintiff noticed "a loud roaring noise and flames racing up the chimney and flames in the ash pit." The man said "that would burn down and burn all right." They waited for a time, but the flames and noises continued, "although not quite so bad." The noise remained the same after the man went away. The plaintiff turned the burner off that night. When she attempted to light it the next day, "it seemed to act very odd," and she shut off the burner. She tried to light it again and saw oil flowing from the burners into the ash pit. The flames were high, and the odor was very objectionable, and it was smoky, so she shut it off. She then "observed oil running all in the ash pan" and that the burners which held the wicks were tipped to the front, and that the oil came from there. She turned the oil on again and noticed oil overflowing from the front of the burner castings into the ash pit. She did not light it the

second time. The plaintiff then went to New Hampshire for about ten days and upon her return she lit one wick. She then noticed that the whole oil pan under the burner was covered with oil. She could see the marks "where it was saturated in." "You couldn't sop it up." It had overflowed, and she saw it overflowing from the front. There were high yellow flames. There was the same roaring sound and smoke. Oil that had dripped into the ash pit caught fire. About three hours later she attempted to light the second wick. In accordance with the printed directions which she got with the burner, she opened the dampers, turned on the oil valve for three quarters of a minute and then shut it off, and as she went to lift the lid to light the burner with the "torch," the burner exploded. Everything was blown from the top of the stove, and the plaintiff was blown to the floor.

The record fails to disclose any clear and detailed description of the construction of the burner or of the method of installation. The "directions," under the heading "To Mount and Level Oil Bottle," contain the following, "The oil burner works on the Constant Level Principle; that is, a constant oil level is always maintained in the lower reservoir (f), and the height of oil in the burner casting (B) is governed by its —— with respect to the reservoir (F). It will be seen that it is exceedingly important that this level relation be correct to insure proper operation of the burner. Too high a level will cause smoking and too low, insufficient heat." The blank in the foregoing quotation is not explained in the record, but from an examination of the exhibit it would seem that a portion of the paper at that place had been torn off or had worn away. The "directions" contain detailed instructions for placing this "lower reservoir (F)" slightly below the level of the burner casting and for adjusting its height to secure just the right level of oil "in the grooves of the burner bowl." It appears that the bottle containing the supply of oil is placed on this reservoir, which is also referred to in the "directions" as a "tank." There was evidence that as installed "the tank on the wall" (which, with the aid of

exhibits, could have been found to mean "reservoir (F)") was about two inches higher than the base of the burners and that the tank and burners were in the same place and condition on the day of the accident as on the day they were installed, and that on the night of the day on which it was installed, the appliance was not operating properly, that "the flames were going too fast for an oil burner."

On all the evidence we think that it was possible for the jury to infer that the roaring, the smoking, the odor and the explosion all resulted from an excess of oil overflowing from the burners, that this in turn was due to a failure of proper adjustment in the installation of the various parts of the apparatus, that the trouble existed and could have been observed before the defendant's man left the job, and that it was negligent installation to leave the completed work in that condition. *Kelley* v. *Laraway*, 223 Mass. 182. *Barabe* v. *Duhrkop Oven Co.* 231 Mass. 466. *Kelly* v. *Pittsfield Coal Gas Co.* 257 Mass. 441. This case is readily distinguishable from *Cadogan* v. *Boston Consolidated Gas Co.* 290 Mass. 496.

The evidence fails to show contributory negligence as matter of law. The jury could have found that the burner worked in the same manner when the plaintiff operated it as it did when operated under the direction of the man who installed it, and that the plaintiff did only what was to be expected from an inexperienced purchaser of such an article.

We cannot say that there was error in refusing to admit the expert testimony of the witness Sullivan, although doubtless it could have been admitted. The exclusion seems to have been put partly on the ground that the judge was not satisfied of the witness's qualifications. Except in rare instances, the decision of this preliminary question must rest with the trial judge. *Commonwealth* v. *Spencer*, 212 Mass. 438, 448. *Johnson* v. *Lowell*, 240 Mass. 546, 549. *Guinan* v. *Boston Elevated Railway*, 267 Mass. 526. Compare *Muskeget Island Club* v. *Nantucket*, 185 Mass. 303.

The remaining exceptions relate to questions of evidence which are not likely to arise in the same form at another trial.

*Exceptions sustained.*