### COMMONWEALTH *vs.* OSCAR BARTOLINI.

Norfolk.    February 7, 1938. — February 28, 1938.

Present: RUGG, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Practice, Criminal,* Disclosure of evidence of Commonwealth, Material witness, Discretionary control of evidence, Requests, rulings and instructions, Charge to jury. *Constitutional Law,* Due process of law. *Pleading, Criminal,* Bill of particulars. *Evidence,* Relevancy; Competency; Of state of mind; Admissions; Of identity; Foot prints; Opinion: expert; Presumptions and burden of proof. *Homicide.*

No error of law nor deprivation of due process appeared in the discretionary denial of motions made before trial by the defendant in a murder case for leave to his counsel to examine certain documents and objects expected to be relied on by the Commonwealth, and the evidence and exhibits before the grand jury, where no prejudice to the defendant in the preparation of his defence appeared.

"Due process" does not require that a discretionary privilege be granted as of right.

On an indictment for murder in the statutory form, with an order for a bill of particulars in response to which the Commonwealth specified certain particulars and stated its inability to specify further, the trial judge later was not obliged either to order further specification of particulars or to quash the indictment.

It was not sufficient ground for a plea in bar to an indictment for murder, or competent evidence at the trial, that the defendant had been held as a material witness under a complaint in a district court charging "John Doe" as the murderer.

At the trial of an indictment for murdering a woman, it was proper to admit, as showing the defendant's state of mind toward her, evidence that he recently had assaulted her where the admission was accompanied by an instruction to the jury that it was not proof of his guilt of the crime charged.

At the trial of an indictment, the form of a question eliciting from a witness for the Commonwealth testimony as to admissions made by the defendant was immaterial and harmless on the record.

At the trial of an indictment for murder, evidence that materials found in the defendant's house were like those wrapped about dismembered parts of the body of the murdered person was admissible as identifying the defendant as the murderer.

At the trial of an indictment for murder, with evidence that the body of the deceased had been dismembered in a particular way, further evidence that the defendant had the tools and experience required to perform such dismemberment was admissible.

It was within the discretion of the judge at the trial of an indictment to exclude certain evidence merely cumulative and tending to open collateral issues.

An expert witness properly was allowed to testify at the trial of an indictment for murder that prints of a naked foot at the house of the deceased were made by the same person as prints made elsewhere and identified as those of the defendant.

At the trial of an indictment, the judge having charged the jury that they could consider the demeanor of the defendant while testifying, it was not error to refuse a request in general terms for an instruction that his demeanor throughout the trial should be considered.

At the trial of an indictment for murder, the judge having given full instructions as to the proof required for a conviction, it was not error to refuse to charge further that the jury need not find the defendant guilty even though they found that he had "taken part in" dismembering the body of the deceased.

At the trial of an indictment for murder, the judge properly refused to instruct the jury that, in considering whether a cleaver introduced in evidence was the weapon actually used, they could also consider a bill of particulars filed nine months earlier containing a statement that the Commonwealth was then unable to give a true description of the weapon used.

At the trial of an indictment for murder, the judge after fully and accurately instructing the jury as to the burden of proof and the degree of proof necessary to convict, was not required to instruct in terms requested by the defendant.

A requested instruction that there was no evidence of motive was properly refused at the trial of an indictment for murder, both because there was sufficient evidence thereof and because the Commonwealth was not obliged to prove a motive.

Repeated blows delivered from different angles with "extreme violence" on the head of one killed thereby was evidence of "deliberately premeditated malice aforethought" and of "extreme atrocity or cruelty" and warranted a conviction of murder in the first degree under G. L. (Ter. Ed.) c. 265, § 1.

INDICTMENT for murder, found and returned in the Superior Court on October 30, 1936.

A verdict of guilty in the first degree was returned before *Leary*, J. The defendant filed an appeal with assignments of error.

*G. B. Lourie*, (*J. R. Zottoli* with him,) for the defendant.

*E. R. Dewing*, District Attorney, (*G. W. Arbuckle*, Assistant District Attorney, with him,) for the Commonwealth.

QUA, J. On October 30, 1936, the defendant was indicted for the murder of Grayce M. Asquith at Weymouth on September 20, 1936. He was found guilty in the first degree on September 22, 1937. Sentence of death was imposed, and stay of execution was ordered on December 2, 1937.

There was evidence that on October 5, 1936, the dissevered legs of a woman were discovered at different places in the water of Boston Harbor. On October 23 a woman's head was found at still another place in the harbor. One leg was wrapped in burlap. The other leg was wrapped in a piece of green window shade and enclosed in a burlap bag. The head was wrapped in a green window shade. The questions argued upon this appeal do not require a recital of the voluminous evidence tending to identify the head and legs as portions of the body of Grayce M. Asquith or pointing toward the defendant as the person who had killed her and dismembered her body. An important part of that evidence consisted of certain finger prints and of foot prints of bare feet identified as those of the defendant impressed upon diluted human blood which had been mopped but not wholly removed from the linoleum floor of the bathroom in the cottage in which the deceased had lived, and where it could have been found that she had been killed and her body cut in pieces.

1. On November 10, 1936, the defendant filed a motion that the Commonwealth be required to furnish him photographic "copies" of the "premises" of the deceased, of finger prints of the defendant and of one Lyons, of finger prints and foot prints found on the premises of the deceased, and of the parts of the body, copies of the report of the medical examiner relative to the parts of the body and of the evidence presented to the grand jury, and the names and addresses of witnesses testifying before the grand jury. In the same motion the defendant asked that permission be given to his counsel in company with necessary experts to examine the premises, the parts of the body, the material in which they were wrapped, the report of the medical examiner, all property and other materials taken by the Commonwealth from the premises occupied by the deceased and from the home of the defendant, the "minutes" of the grand jury, and all exhibits introduced before them. The judge who heard and denied this motion on December 10, 1936, stated that he knew of no authority "for the court's ordering the prosecutor to do anything of the nature that

is called for here, at this stage of the case" (underlining appears in the "Transcript of the Evidence"); that when the objects to which the motion referred had been put in evidence they would come within the power of the court; and that fairness might then require the court to allow an examination by experts, although that might mean the suspension of the trial for a time.

On April 2, 1937, the defendant filed a second motion that permission be given to his counsel, in company with necessary experts, to examine within a reasonable time before the commencement of the trial, the parts of the body and the material in which they had been wrapped, the report of the medical examiner and all property and other materials taken by the Commonwealth from the premises occupied by the deceased and from the premises of the defendant, and all finger prints taken by the Commonwealth at the premises of the deceased. This motion was denied after hearing by another judge on July 29, 1937. The evidence at that hearing, if any was offered, is not included in the "transcript of the evidence" required by G. L. (Ter. Ed.) c. 278, § 33E, to be transmitted to this court as a part of the record on appeal. So far as appears no rulings of law were requested or made.

On September 1, 1937, the defendant filed a third motion that permission be given to his counsel, in company with necessary experts, to examine the same objects and document mentioned in the second motion. This motion was heard at the opening of the trial before a third judge. In denying the motion the judge stated that he would give counsel for the defendant an opportunity to examine the articles and document mentioned in the motion when they were presented in court and to make "such a study of them as is reasonably necessary." He added that he would see that counsel for the defendant should have "ample opportunity to inspect and examine any and all articles or documents, or anything else that is offered in evidence." So far as appears all of the tangible objects to which the motions refer were offered in evidence, except the parts of the body, and there is nothing to show that the Commonwealth still

had those parts in its possession at the times when the motions were filed, or when they were heard, or at the time of the trial.

We do not discover in the proceedings on these motions any error affecting adversely the interests of the defendant. This court said in *Commonwealth* v. *Jordan,* 207 Mass. 259, 265, that "it was within the discretion of the judge to grant or refuse" a somewhat similar motion; and that there is no rule of law which requires the Commonwealth to disclose the evidence upon which it relies or which gives the defendant the right to ask such disclosure. See *People* v. *Supreme Court,* 245 N. Y. 24; Wigmore on Evidence (2d ed.) § 1863; and cases collected in 52 Am. L. R. 207. Even if the judge who heard the first motion mistakenly believed that he had no power to grant any part of it at that time, no harm was done. The second and third motions in substance covered nearly the same ground as the first motion. So far as appears no ruling of law was made in connection with these motions and their denial on discretionary grounds would be clearly within the power of the court. The second motion was denied long before the trial. So far as appears the defendant had the benefit of the discretion of the second judge at that time under conditions then existing. In so far as the later motions did not fully cover the subject matter of the first one, the denial of the first motion, by the statement of the judge himself, was not final, but amounted at most only to a postponement of action until the trial. The trial judge made it plain at the beginning of the trial that he would fully protect the defendant's rights. There was a view of the premises occupied by the deceased. Photographs of the premises and of objects in question were freely used. The medical examiner testified and was cross-examined at great length. A list of the names and addresses of witnesses who testified in this case before the grand jury appears among the copies of documents filed in the clerk's office, and we do not understand that the defendant now contends that he did not have these names. See *Commonwealth* v. *Edwards,* 4 Gray, 1, 5; *Commonwealth* v. *Ventura,* 294 Mass.

113, 120; G. L. (Ter. Ed.) c. 277, § 9. He had no right to examine "minutes" of the grand jury or evidence taken before or exhibited to them. *Commonwealth* v. *Goldberg,* 212 Mass. 88, 91, 92. *Commonwealth* v. *Gettigan,* 252 Mass. 450, 464. At no time during the trial was the defendant refused any request for an opportunity to examine anything introduced in evidence or within the possession or control of the Commonwealth. The essential thing is that the defendant shall have full and adequate opportunity to prepare his defence and to meet all evidence against him. From a reading of the entire evidence we are satisfied that such opportunity was not denied to this defendant, and that he was not prejudiced by any delay in his opportunity to examine anything.

What has been said is sufficient to show that in the matter of these motions there was no violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States. A privilege which is denied the status of a right by the great weight of common law authority cannot be deemed a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder* v. *Massachusetts,* 291 U. S. 97, 105. *Jordan* v. *Massachusetts,* 225 U. S. 167. *Commonwealth* v. *Millen,* 289 Mass. 441, 487. There is a wide gulf between this case and *Powell* v. *Alabama,* 287 U. S. 45.

2. On November 10, 1936, the defendant moved for a bill of particulars as to the exact time, place, means and manner of the commission of the crime. The motion was allowed. The Commonwealth replied, in substance, that the exact time and place were unknown to it; that the means and manner of commission of the crime were "The use and application of a heavy instrument or weapon on various parts of the head of Grayce Asquith, a true description of said instrument or weapon at the present time being unknown to the Commonwealth"; and that the Commonwealth was unable to specify further. On September 7, 1937, the trial judge denied a motion of the defendant for further specifications, and also a motion to quash the indict-

ment for failure of the Commonwealth to furnish full and proper particulars or specifications in conformity with the original order.

The indictment itself was in two counts, both alleging that the crime was committed on September 20, 1936, at Weymouth, and the second count adding that it was committed by striking the deceased over the head with an instrument a true description of which was to the grand jurors unknown. The form of the indictment was that set forth as sufficient in G. L. (Ter. Ed.) c. 277, § 79, with the addition of time and place. This form was held constitutionally valid in *Commonwealth* v. *Jordan*, 207 Mass. 259, 266–268, affirmed in *Jordan* v. *Massachusetts*, 225 U. S. 167, and in other cases. *Commonwealth* v. *Scicchitani*, 240 Mass. 402. *Commonwealth* v. *DiStasio*, 294 Mass. 273, 280. The defendant was entitled to further particulars as a matter of right only if the charge would not otherwise be fully and plainly, substantially and formally, described, as required by the Bill of Rights, or when necessary to give the defendant and the court reasonable knowledge of its nature and grounds. *Commonwealth* v. *King*, 202 Mass. 379, 384. *Commonwealth* v. *Ellis*, 207 Mass. 572, 576. *Commonwealth* v. *Anderson*, 245 Mass. 177, 184. G. L. (Ter. Ed.) c. 277, § 40. See G. L. (Ter. Ed.) c. 277, § 34. The defendant concedes, and we think properly, that further particulars in this case were within the discretion of the judge. *Commonwealth* v. *Wakelin*, 230 Mass. 567. *Commonwealth* v. *Sacco*, 255 Mass. 369, 412. *Commonwealth* v. *Mercier*, 257 Mass. 353, 364. *Commonwealth* v. *Lombardo*, 271 Mass. 41, 45. But the defendant does contend, in substance, that as the judge before whom the first motion for particulars came allowed it, the judge before whom the second motion came was obliged to enforce the order of the first judge by securing particulars substantially enlarging upon the indictment or to quash the indictment. There is nothing in this contention. It is not quite true that the Commonwealth had furnished no information in response to the order of the court, and it had stated its inability to specify further. The matter still remained one of discretion, and the second judge

was entitled to exercise his own discretion in the light of the statement of the Commonwealth. *Commonwealth* v. *Howard*, 205 Mass. 128, 143. See *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 483, 484.

3. There was no error in overruling the defendant's plea in bar based upon the facts that a complaint had been filed in the District Court of East Norfolk on or about October 30, 1936, against "John Doe," for the murder of Grayce Asquith, and that, in connection with that complaint, upon application of the Commonwealth, after hearing, the judge of the District Court had ordered the present defendant to be held as a material witness. The act of a judge in ordering a person to recognize as a witness to appear and testify bears no resemblance to an adjudication either that the person named in the complaint or indictment is guilty, or that the person held as a witness is not himself guilty of the crime charged. See *Commonwealth* v. *Min Sing*, 202 Mass. 121.

There was no error in excluding substantially these same facts when offered by the defendant as evidence at the trial. They had no tendency to establish his innocence or to rebut evidence introduced against him.

4. Evidence was admitted tending to show that on two occasions within about a month preceding the alleged date of the murder the defendant had assaulted the deceased at her home, and that after one of these occasions many black and blue marks were seen upon the person of the deceased. The jury were repeatedly instructed in substance that this evidence was admitted solely to show the state of mind of the defendant and his feeling toward the deceased, and that the defendant could not be found guilty of the crime charged in the indictment because of any previous offences which he might have committed against her. With this instruction the evidence was competent. Taking this in connection with other evidence, it might have been found that the defendant's object on the occasions described was to compel the deceased to have intercourse with him against her will. Whether or not this should be found to have been his purpose, the evidence

tended to show an attitude or state of mind on the part of
the defendant toward the deceased which predisposed him
to attack her when the opportunity offered. The occasions
mentioned were sufficiently near in time to permit an in-
ference that this state of mind continued until the date
of the killing. The evidence thus bore upon the possible
motive of the defendant. No objection was made to the
instruction given, and no additional instructions as to the
application of this evidence appear to have been asked for.
On this point the case is within the authority of various
decisions. *Commonwealth* v. *Ramey*, 243 Mass. 394, and
cases cited. *Commonwealth* v. *McCarthy*, 119 Mass. 354.
*Commonwealth* v. *Holmes*, 157 Mass. 233. *Commonwealth*
v. *Bemis*, 242 Mass. 582, 585. *Commonwealth* v. *Piccerillo*,
256 Mass. 487, 489. Compare *Commonwealth* v. *Jackson*,
132 Mass. 16; *Commonwealth* v. *Kosior*, 280 Mass. 418,
423.

5. A witness called by the Commonwealth was asked, in
substance, whether he could recollect what questions he
had put to the defendant in answer to which the defendant
had made admissions, and what admissions he had made.
It is now argued that the question was improper in form
in that it required the witness to decide in his own mind
what statements of the defendant were admissions and
what were not. Whether the question was objectionable
need not be decided, as the answer clearly included only
admissions or equivocal statements by the defendant as to
one of the previous assaults upon the deceased, and was
competent evidence. No harm was done. *Commonwealth*
v. *Oakes*, 151 Mass. 59, 60. *Commonwealth* v. *Flynn*, 165
Mass. 153, 156. *Plummer* v. *Boston Elevated Railway*, 198
Mass. 499, 510–511. *Commonwealth* v. *Dies*, 248 Mass. 482,
493. *Commonwealth* v. *Patalano*, 254 Mass. 69, 72. *Di
Rienzo* v. *Goldfarb*, 257 Mass. 272, 282.

6. One group of assignments of error is based upon ex-
ceptions to the introduction of evidence of green window
shades and pieces of twine found in the building in which
the defendant lived similar to the green window shades
and twine with which portions of the body of the deceased

had been wrapped, of testimony that the shades were in the building, and of photographs of parts of the premises showing these or similar articles there. This evidence was properly admitted as tending to prove that the defendant had access to these materials and, in connection with the other evidence, to identify him as the person who committed the crime. *Commonwealth* v. *Choate*, 105 Mass. 451. *Commonwealth* v. *Scott*, 123 Mass. 222, 229, 237. *Commonwealth* v. *Derry*, 221 Mass. 45. *Commonwealth* v. *Sacco*, 255 Mass. 369, 430. See *Commonwealth* v. *Kennedy*, 170 Mass. 18, 23–24.

7. There was no error in admitting in evidence a large knife called a "French knife" and a "spatula" found at the home of the defendant, or in admitting evidence that the defendant had been seen cutting up chickens and that he did so in a satisfactory manner. There had been much evidence as to the skill which had been exercised in the dismemberment of the body of the deceased, and that such work would have been done by a person who was familiar with the cutting of animal carcasses but who was not familiar with the cutting of human bodies. There was evidence that cuts upon the skull of the deceased were caused by a "cleaver" or some similar instrument; that parts of the body were cut by a long, sharp knife; that the defendant had sought employment and had been employed as a "chef"; and that the defendant had stated that he had a "cleaver," a "French knife" and the other tools used by a "chef." All of this evidence taken together had some tendency to show that the defendant possessed the peculiar skill and was familiar with the use of tools necessary to dismember a human body in the manner in which the body of Grayce M. Asquith had been dismembered. Of course this evidence alone would fall far short of proving guilt, but in connection with the other evidence in this case, it had some legitimate probative force. *Commonwealth* v. *Choate*, 105 Mass. 451. *Commonwealth* v. *Howard*, 205 Mass. 128, 152. *Commonwealth* v. *Kosior*, 280 Mass. 418, 421. *Commonwealth* v. *Polian*, 288 Mass. 494, 501.

8. The defendant contended that Lyons had an oppor-

tunity to commit and might have committed the crime. In cross-examination of the officer who had charge of the investigation of the case in behalf of the State police the defendant was allowed to bring out in a general way the unsuccessful efforts which had been made by the witness to locate Lyons either alive or dead, including the fact that a circular concerning him had been widely distributed to identification bureaus in this country and elsewhere wherein the persons to whom the circular was sent were asked to search records, both criminal and of the unidentified dead. The exclusion of the circular itself was at least within the discretion of the trial judge. It would have added nothing of consequence and competency to what had already been admitted, and it might have led into collateral issues.

9. There was no error in permitting the witness Wentworth to testify that foot prints of a naked foot on the linoleum floor of the bathroom at the house of the deceased were made by the same person who had made prints at the police station identified as those of the defendant. There was ample evidence of special study and knowledge by this witness of the subject of foot prints as well as of finger prints. The qualifications of a witness to testify as an expert are commonly for the trial judge to determine. *Commonwealth v. Spencer*, 212 Mass. 438, 448. *Corrao v. Sears, Roebuck & Co.* 298 Mass. 23, 26. There was also ample evidence that foot prints, like finger prints, remain constant throughout life and furnish an adequate and reliable means of identification. On finger prints in general and proof of identity therefrom by expert testimony see *People v. Jennings*, 252 Ill. 534, 546; *People v. Roach*, 215 N. Y. 592, 601; *Lamble v. State*, 96 N. J. L. 231, 236; Wigmore on Evidence (2d ed.) § 414. Prints of the palm of the hand were admitted in *State v. Kuhl*, 42 Nev. 185.

10. There was no error in refusing the defendant's requests for rulings that the jury should take into consideration the defendant's demeanor, conduct and manner throughout the trial. If the refusal of such a request can ever be error, there is nothing here to show what particular conduct, if any, was meant, or how the conduct of the

defendant when not on the witness stand bore upon the issues in the case, or that the defendant could have been harmed by the refusal. In so far as these requests may have related to the defendant's appearance and conduct as a witness, they were given in substance.

11. The judge was not bound to give a specific instruction to the effect that even if the jury believed that the defendant "took part in" the dismemberment of the body they need not find him guilty of the murder. Full instructions were given as to the elements which must be established in order to find the defendant guilty of murder under the indictment.

12. There was no error in the refusal of the requested instruction that "In considering whether or not the cleaver introduced in evidence . . . was actually used as the weapon in this case" the jury might take into consideration that the Commonwealth in its specifications stated that it was unable to describe the means employed further than as an instrument "a true description of which is unknown." The exact language of the specification was, "a true description of said instrument or weapon at the present time being unknown to the Commonwealth." Such a statement of mere lack of knowledge made in specifications filed approximately nine months before the trial ought not to be used to control evidence actually heard by the jury at the trial. Moreover, it has been said that the only purpose of a bill of particulars "is to specify more particularly the acts constituting the offence." *Commonwealth* v. *Kelley*, 184 Mass. 320, 324. *Commonwealth* v. *Sacco*, 255 Mass. 369, 412. See *Commonwealth* v. *Snyder*, 282 Mass. 401, 412; G. L. (Ter. Ed.) c. 277, § 40.

13. The judge was not required to instruct the jury in express words that the burden of proof "remains upon the State throughout the case to prove an unlawful killing" and "does not, under any circumstances, shift to the defendant to prove his innocence." Full and accurate instructions were given that the burden of proof was upon the Commonwealth and as to the degree of proof necessary to convict. The jury could not possibly have supposed that

the defendant had the burden of proving his innocence at any stage.

14. The judge could not properly have given an instruction that there was no evidence of any motive for the defendant to kill the deceased. There was evidence that the defendant had committed a serious crime (rape) upon the deceased, as to which she would naturally be the principal witness. The evidence upon this point has already been discussed under "4." Moreover, the Commonwealth was not obliged to prove a motive. *Commonwealth* v. *Richmond*, 207 Mass. 240, 243, 244. *Commonwealth* v. *Feci*, 235 Mass. 562, 566–567, and cases cited.

15. There was evidence to support a conviction in the first degree under G. L. (Ter. Ed.) c. 265, § 1.

There was evidence that while the victim was alive repeated blows had been struck upon her head with a heavy instrument from different positions, causing various fractures which extended through the skull. Some of the blows appeared as if made with a flat surface. Others appeared to have been made by a cutting edge with a sharp corner. The thickest part of the skull had been "split open." Various fractures aggregated thirteen and one half inches in length. The cheek bone had been "fragmented." The upper jaw bone was fractured. The orbit of one eye had been fractured, and the greater part of the eye was absent. The brain had been lacerated and was covered with a layer of blood. The appearance of the tissues indicated that the victim had lived from ten to thirty minutes after some of the blows had been struck, although she may have been unconscious. The blows had been delivered with "extreme violence."

Upon this evidence the jury could find that there had been in the words of the statute "deliberately premeditated malice aforethought," as those words have been defined in our decisions. They could find a conscious and fixed purpose to kill, continuing for the time necessary to procure in hand the cleaver or some instrument or weapon of similar form and to use it repeatedly from different angles with deadly intent and result. The time element involved in "deliber-

ately premeditated" was so fully explained by Hammond, J., in *Commonwealth* v. *Tucker*, 189 Mass. 457, 486–496, that it would be superfluous to discuss the subject further.

The jury could also find under the second alternative of the statute that there had been "extreme atrocity or cruelty." The ferocity which it could be found was evinced by so many blows of extreme violence upon a living body would support this conclusion. *Commonwealth* v. *Feci*, 235 Mass. 562, 571. *Commonwealth* v. *Devereaux*, 256 Mass. 387, 394. *Commonwealth* v. *Knowlton*, 265 Mass. 382, 389.

16. There was no error in the denial of the defendant's motion for a new trial. Whether the verdict was against the evidence and whether questions of law should be re-examined were both matters for the judge's discretion. *Commonwealth* v. *Osman*, 284 Mass. 421, 426. *Commonwealth* v. *Millen*, 289 Mass. 441, 487.

*Judgment on the verdict.*