## COMMONWEALTH *vs.* STEARNS K. ABBOTT.

Middlesex.    Jan. 26. — Feb. 24, 1881.    LORD & FIELD, JJ., absent.

At the trial of an indictment for the murder of a woman in 1880 at G., there was
evidence that her reputation for chastity, while living in L. from 1873 to 1877,
was bad; but there was no evidence affecting her reputation in that respect
after she left L. in 1877. It appeared that, while living in G. from 1879 until
the time of her death, a period of eight months, her reputation was unques-
tioned; and that she and her husband lived together as husband and wife until
her death. The defendant, for the purpose of showing that the husband of the
woman committed the crime, offered evidence that the husband and wife quar-
relled between 1873 and 1877, while living in L.; that, in 1874, the husband was
seen entering his own house through a window with an axe in his hand, and
immediately after, with the axe in his hand, uttered threats against his wife
and a man; that the same man continued to frequent his house as late as 1877,
and he complained of it; and that, in 1874 and 1877, he applied to a consta-
ble to come to his house and remove a man, who, as he alleged, was there for
improper purposes with his wife. The defendant also offered to prove the
ill feeling of the husband towards his wife by statements, not in the nature
of threats, made to a witness in 1874 and 1877. All the evidence offered was
excluded. *Held,* that the defendant had no ground of exception.

COLT, J.    The defendant was indicted for the murder of
Maria L. Crue at Groton in the month of January 1880. At
the trial, in order to exculpate himself, and for the purpose of
showing the existence of motive on the part of the husband of
the deceased to commit the crime, he offered evidence that Crue
and his wife quarrelled between the years 1873 and 1877, while
living in Lexington; that, in 1874, he was seen entering his
own house through a window with an axe in his hand, and im-
mediately after, with the axe in his hand, uttered threats against
his wife and a man not named; that the same man continued to
frequent Crue's house as late as 1877, and Crue complained
of it. He also offered to show that, in 1874 and 1877, Crue
applied to a constable to come to his house and remove a man,
who, as he alleged, was there for improper purposes with his
wife. He further offered to prove the ill feeling of Crue to-
wards his wife, by statements, which were not in the nature of
threats, made to a witness in 1874 and 1877. There was evi-
dence that the reputation of the deceased for chastity while
living in Lexington, from 1873 to 1877, was bad. But there
was no evidence affecting her reputation in that respect after

she left that place in 1877. There was evidence uncontrolled, tending to show that, while living in Groton, from May 1879, her reputation was not questioned; and it appeared that Crue and his wife continued to live together as husband and wife up to the time of her death.

The evidence offered was excluded by the justices who presided at the trial; and the question on this bill of exceptions is, whether there was error in law in this ruling.

The rules which govern the admission of evidence apply with equal authority and force in criminal and civil proceedings. These rules must be received in all cases as the surest guide which the law affords for ascertaining the truth of any alleged matter of fact, and must be the same both on the criminal and civil side of the court, whatever the nature of the fact to be investigated. There can be no safe departure from them under the influence of a feeling of tenderness or humanity for persons charged with crime. Rosc. Crim. Ev. (9th ed.) 1. 3 Russell on Crimes (9th ed.) 212. *United States* v. *Britton*, 2 Mason, 464. 1 Greenl. Ev. § 65.

It is a cardinal rule governing the production of evidence, that the testimony offered must correspond to the allegations, and be relevant to the issue on trial. It is not necessary that the evidence should bear directly on the issue. It is sufficient if it tends to establish the issue, or constitutes a link in the chain of proof. But in order to be admissible, it must either alone, or in connection with other evidence produced, be capable of affording a reasonable presumption or inference as to the principal fact in dispute. The rule excludes all collateral facts which tend to divert the mind from the real question, and are calculated only to prejudice and mislead the jury. The existence of a criminal motive is an element which it is often necessary to establish in order to give character to the acts and conduct of a party charged with or suspected of crime. In such case, the conduct or declarations of a party, both before and after the principal fact in issue, are admissible, provided they are sufficiently near in point of time, and sufficiently significant of the motive or intent to be proved. The rules which govern human conduct are to be reasonably applied in these cases, as in all other investigations of fact. They are to be so applied

in all cases where the inquiry is as to. the mental or moral con dition of a person at the time a particular act was done. The intent or disposition, when it constitutes an element of crime, can only be ascertained, as all moral qualities are, from the acts and declarations of the party.

It is difficult, in dealing with this description of evidence, to define, as matter of law, the precise limits which must practically control its admission. *Cook* v. *Moore*, 11 Cush. 213. In *Shailer* v. *Bumstead*, 99 Mass. 112, where the mental condition of a testator was the subject of inquiry, on the question of undue influence exerted at the time the will was executed, it was said: " If therefore the statement or declaration offered has a tendency to prove a condition not in its nature temporary and transient, then, by the aid of the recognized rule that what is once proved to exist must be presumed to continue till the contrary be shown, the declaration, though prior in time to the act the validity of which is questioned, is admissible. Its weight will depend on its significance and proximity. It may be so remote in point of time, or so altered in import by subsequent changes in the circumstances of the maker, as to be wholly immaterial, and wisely to be rejected by the judge.". " To a great extent, it must be left to the presiding judge to determine upon the facts before him how far evidence of this description may have a tendency to throw light on the fact to be found, namely, the actual condition at the date of the will. Some limit must of course be had in applying practically the rules which govern the admission of this evidence." 99 Mass. 120, 130. And in *Thayer* v. *Thayer*, 101 Mass. 111, 113, where the fact to be proved was the existence of an adulterous disposition towards a particular person at a time fixed, and the evidence was of such a disposition toward the same person at a subsequent time, it was said that " the limit, practically, to the evidence under consideration is that it must be sufficiently significant in character, and sufficiently near in point of time, to have a tendency ' to lead the guarded discretion of a reasonable and just man ' to a belief in the existence of this important element in the fact to be proved. If too remote or insignificant, it will be rejected, in the discretion of the judge who tries the case."

Upon a full and careful consideration of this bill of exceptions, we are all of opinion that there is no error in the exclusion of the evidence offered in this case.

It was clearly competent for the defendant to prove that he did not commit the murder, by showing that some other person did; and, as one step towards that end, he had a right to prove such a state of ill feeling on the part of the husband, existing at the time of the homicide, as would furnish him with a motive for the commission of the crime. But the difficulty is that the ill feeling here offered to be shown was not of such a character as to afford a reasonable ground for the inference that it existed at the time of the murder. It is to be considered in connection with the important fact, that during the time covered by the evidence, namely, from 1873 to 1877, the parties lived together as husband and wife, and continued so to live together as long as she lived. There was no evidence offered of the continuance or existence of any ill feeling, or of any occasion for ill feeling, after the removal from Lexington in 1877 to the time of her death in 1880. The whole evidence fails to show such deeply seated and enduring hostility on the part of the husband as to lead to the presumption that, without further manifestation, and under the concealment of kindly relations, it continued to exist and so increase in power as to furnish a motive for the commission of the crime.

The defendant offered nothing, beyond the evidence which we have considered, tending to connect the husband with the crime. It was indeed contended by counsel, that some of the circumstances tended to implicate him, and evidence was produced that a stranger was in town and near the place on the day of the murder. But beyond this there was no claim that any particular person was indicated, or suggested by any evidence, as having the means and opportunity to commit the murder, or as being in any manner connected with it.

The existence of ill feeling as a motive for the commission of crime will not alone justify submitting to a jury the question of the guilt of a person entertaining such feeling. It becomes material only when offered in connection with other evidence proper to be submitted, showing that the person charged with such ill feeling was in fact implicated in the commission of the

crime. In practice it is not necessary that the relevancy of tes-timony should appear when it is offered. It is usual for the judge to receive it at any stage of the trial, upon its being made to appear that it will be rendered material by other evidence. But when it is not thus connected with the issue, it is to be ex-cluded. The mere claim made by counsel that there are circum-stances which tend to implicate the person charged, is not enough. There must be proof of such circumstances, or an offer to prove. The evidence that a stranger was in town at the time of the murder does not alone implicate the husband. There is in this bill of exceptions nothing to show that the ad-mission of evidence was too strictly limited by the justices who presided at the trial.　　　　　　　*Exceptions overruled.*

*G. Stevens & W. H. Bent*, for the defendant.

*G. Marston*, Attorney General, for the Commonwealth.