COMMONWEALTH *vs.* FRANK S. RAMEY.

Middlesex.     November 16, 1922. — January 5, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Evidence,* Of motive, Of previous crime, Of threat.

At the trial of an indictment charging that the defendant assaulted a certain girl with intent to murder her, after the admission of circumstantial evidence tending to show that the crime had been committed by the defendant, it was proper to admit evidence tending to show that about two years before the assault charged in the indictment the defendant had assaulted the girl violently, that a short time thereafter he had thrown "rocks" at her, and that, after a court hearing as to the earlier assault, a witness had heard him state to a companion, "By God! I'll get that girl yet," such evidence being admissible to show the state of mind of the defendant in committing the act with which he was charged and an intent on his part ultimately to injure the girl, and the question of its remoteness being for the trial judge to determine in his discretion, which in the circumstances could not be said to have been exercised wrongly.

INDICTMENT, found and returned on October 20, 1920, charging that the defendant on October 6, 1920, "did assault Mildred M. Wannamaker with intent to murder her."

In the Superior Court, there was a trial before *Cox,* J.  Material

evidence and exceptions saved by the defendant are described in the opinion.  The defendant was found guilty, and alleged exceptions.

*P. B. Kiernan,* for the defendant.

*R. H. Beaudreau,* Assistant District Attorney, for the Commonwealth.

CROSBY, J.  The defendant was indicted for an assault with intent to murder one Mildred Wannamaker on October 6, 1920. No witness was produced who testified to seeing an assault committed, and she had no recollection of it.

It appears from the record that she left her home about 7:45 o'clock in the morning of October 6, 1920, for the Montrose railroad station in Wakefield, going by way of Montrose Avenue. A witness, named Bruorton, testified that as he was driving along that avenue about eight o'clock in the morning, of the same day, he saw in the middle of the road a woman's shoe, some pieces of blue ostrich plumes, and a pair of women's gloves, which were identified as those of the person assaulted; that there were many footprints of a man and woman on the road and signs of a struggle; that the bushes were trampled and broken at the side of the road, and her hat was hanging on a wire fence next to the road; that he followed the trail through the bushes which led easterly from the road, and ten feet therefrom found the other shoe, and one hundred and fifty feet farther on he found the girl lying on the ground in a pool of blood.  The record states that her skull was fractured, and there were marks of injury on her head, face, wrist, throat and mouth.  She was unconscious and remained so for over two weeks.  The defendant worked at a greenhouse situated easterly from Montrose Avenue, which is a walking distance of about eighteen minutes from the place where the girl was lying.  A witness testified that he saw the defendant about ten minutes before seven o'clock on the morning of the assault, going in the direction of Montrose Avenue.  After the assault was committed, but on the same day, Miss Wannamaker's pocketbook, War Savings stamps and lunch tickets were found in the bushes, "strung along in a line" between the place where she was discovered and the Saugus River, in the direction of the greenhouse.  There was evidence that a pocket knife with a gold handle was found after the assault in the defendant's lunch

basket; and Miss Wannamaker testified that the knife belonged to one Roger Berry and that she had it up to the time that she could last remember and carried it in her bag. Berry testified that he let her have it three or four weeks before the date of the assault.

At the trial she was allowed to testify, subject to the defendant's exception, that in the year 1918 about two years before the alleged assault she met the defendant on Montrose Avenue one night when she was on her way home from work; that just after she passed him he "sprung on . . . [her] shoulders and knocked . . . [her] down and he stuck his finger down . . . [her] throat, tried to gag . . . [her] or something, and then he jumped off and ran in the bushes and off in the woods." She also testified that some time after this incident, at the same place, she was walking along the street and the defendant threw "rocks" at her. This evidence was also admitted subject to the defendant's exception.

The defendant was arrested for the assault first above described. A witness called by the government testified he was in court when the defendant was tried for the earlier assault and that afterwards, while passing along the street in Wakefield, he heard some boys talking to the defendant and heard the latter say, "By God! I'll get that girl yet." This evidence was admitted subject to the defendant's exception.

All the foregoing testimony was admitted by the court solely to show the state of mind of the defendant in committing the act with which he was charged and an intent on his part ultimately to injure the girl. The jury were carefully and accurately instructed that the testimony so admitted was not to be used for any other purpose, and were also told, in substance, that the defendant could not be convicted of the offence charged merely upon proof that on some other occasion he had committed another assault upon the same person. We are of opinion that the evidence was competent for the purpose for which it was admitted. The evidence of previous assaults and the threat alleged to have been made, if believed, tended to show a settled ill will and hatred on the part of the defendant toward the Wannamaker girl, and was evidence of a motive on his part to commit the crime. It was competent for the purpose of showing a course of conduct toward her; accordingly evidence of his acts and threats was admissible.

Evidence that a person charged with a crime had a motive for its commission is always competent; and when shown, may help to confirm the conclusion reached from all the other evidence that the accused is guilty of the offence charged. *Commonwealth* v. *Abbott,* 130 Mass. 472. *Commonwealth* v. *Howard,* 205 Mass. 128. *Commonwealth* v. *Rivet,* 205 Mass. 464. *Commonwealth* v. *Feci,* 235 Mass. 562.

"The intent and disposition with which one does a particular act must be ascertained from his acts and declarations before and at the time; and when a previous act indicates an existing purpose, which from known rules of human conduct may fairly be presumed to continue and control the defendant in the doing of the act in question, it is admissible in evidence. In many cases it is the only way in which criminal intent can be proved; and the evidence is not to be rejected because it might also prove another crime against the defendant." *Commonwealth* v. *Bradford,* 126 Mass. 42, 45. *Commonwealth* v. *McCarthy,* 119 Mass. 354. *Commonwealth* v. *Abbott, supra. Commonwealth* v. *Holmes,* 157 Mass. 233, 240. *Commonwealth* v. *Feci, supra. People* v. *Sharp,* 107 N. Y. 427. *People* v. *Harris,* 136 N. Y. 423. *Moore* v. *United States,* 150 U. S. 57.

The questions whether the acts of the defendant as testified to by the girl and the threats testified to by Bruorton were too remote to be admissible were for the court in the exercise of its discretion, and we are unable to say that it was exercised wrongly. *Commonwealth* v. *Bradford, supra. Lane* v. *Moore,* 151 Mass. 87. The cases of *Commonwealth* v. *Abbott, supra, Commonwealth* v. *Campbell,* 155 Mass. 537, *Noyes* v. *Boston & Maine Railroad,* 213 Mass. 9, are not at variance with but support the conclusion reached.

*Exceptions overruled.*