COMMONWEALTH vs. ROGER PEREZ ROJAS.

Middlesex.  January 5, 1983. — April 5, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Homicide.  Evidence,* Consciousness of guilt.  *Practice, Criminal,* Required finding.

Circumstantial evidence at a murder trial, which permitted the jury to
    find that the defendant and the victim were alone together in an apart-
    ment, that the victim had a roll of money and certain gold jewelry that
    were missing when his body was found, that no forced entry or scuffle
    had occurred, and that the victim had been shot at close range while
    asleep or unconscious, when considered with evidence of the defend-
    ant's consciousness of guilt shown by his false statements to police, his
    flight from Massachusetts to Florida following questioning by police,
    and his attempt to conceal his identity when arrested, was sufficient to
    warrant the jury in concluding beyond a reasonable doubt that the
    defendant had committed murder in the first degree. [629-630]

INDICTMENT found and returned in the Superior Court
Department on June 22, 1981.

The case was tried before *Dimond*, J.

*Carlo A. Obligato* for the defendant.

*James W. Sahakian,* Assistant District Attorney, for the
Commonwealth.

WILKINS, J.  The defendant's appeal from his conviction
of murder in the first degree challenges only the judge's
denial of his motion for a required finding of not guilty
presented at the close of the Commonwealth's case.  As will
be apparent from the facts, the jury would have been war-
ranted in finding beyond a reasonable doubt that whoever
killed the victim did so with deliberate premeditation, with
malice aforethought, and in the commission of the felony of
armed robbery.  The defendant's argument is that the cir-
cumstantial evidence did not warrant a finding beyond a

reasonable doubt that he was the person who killed the victim. We reject that argument and find no circumstances warranting a new trial or a reduction of the verdict under G. L. c. 278, § 33E. We thus affirm the judgment.

The defendant, who was a Cuban refugee, lived with his wife at the home of a cousin in Revere. The victim, Robert Spinazola, also known as Bobby Burke, a name he used as a professional dancer, operated a beauty and hair salon in Chelsea. He was the landlord of a health club next door. The victim, whom we shall call Burke, was a homosexual. On November 29, 1980, Burke was introduced to the defendant at Burke's hair salon. On December 4, 1980, late in the afternoon, the defendant and Burke were together at the health club. Burke was wearing gold jewelry. About 6:30 P.M. on that day, Burke telephoned one Mary Buono, a longtime friend, and asked if he and a friend, who had been doing brickwork outside the salon, could come to dinner at her apartment in Everett. She said they could. Commencing about 7 P.M., a taxicab driver drove Burke and the defendant to Buono's residence, arriving about 7:30 P.M., after two stops at bars. Burke paid the driver from a thick roll of bills he carried in a pants pocket.

At Buono's apartment, the three drank wine and then ate dinner starting about 9 P.M. About midnight, Buono left her apartment to go to the home of a friend to study for a college examination she was to take the next day. She told Burke she would spend the night there. She left by the front door, which locked automatically behind her. She testified that the back door and bulkhead were locked, and that her windows had storm windows and were locked. She testified that, when she left, Burke was intoxicated, but the defendant was not.

The next day Buono returned home around noon and found Burke dead on a sofa, his pockets inside out, and his pants zipper open. His gold ring was on the floor. Burke's other gold jewelry, except for a piece of his gold neck chain, was missing, as was his money. Buono's bed was not arranged as she had left it. There were two dif-

ferent kinds of cigarettes in a wine glass on the bedside table. There were no signs of forced entry. No one else had a key to the Buono apartment. None of her possessions was missing. Buono consulted a neighbor, and the police were called.

Burke had a single entrance bullet wound in the head through which two .32 caliber bullets had been fired. The gun had been held against the head. Tests showed that Burke had a high blood alcohol content of .14. A ballistics expert gave an opinion that both bullets had been fired from a .32 caliber revolver of average size, measuring one and one-half inches at its widest part. Buono did not have a gun in her home, and no gun was found in the apartment. Burke died two to four hours after eating.

The wife of the defendant's cousin testified that Rojas was not home when she locked up at 2 a.m. on December 5. He did not have a key to the house. When she got up about 6:30 a.m., the defendant was in bed.

The police found a piece of paper with the name Roger and a telephone number on it at Burke's salon. The number was listed to the defendant's cousin. In a routine investigation, the police came to the cousin's Revere home and spoke with the defendant, through an interpreter (the defendant's cousin). The police gave the defendant Miranda warnings. He denied that he knew Bobby Burke, that he gone to Everett in a taxicab, and that he had a gun. He said that on Thursday night (December 4) he had gone to the house of a cousin in Jamaica Plain and his cousin had driven him home about 2 a.m. The police checked with people at the cousin's residence in Jamaica Plain and concluded that the defendant had not been there on Thursday night. When the police returned to the Revere residence, the defendant was gone. Buono identified a picture of the defendant from an array of photographs.

Several months later, in March or early April, 1981, the police learned that the defendant's wife had gone to Miami, Florida. They advised police in Florida. On April 3, 1981, an F.B.I. agent named Sanchez found the defendant and

told him that he was under arrest for unlawful flight to avoid prosecution for murder in Massachusetts. The defendant claimed his name was Fernandes and produced a Social Security card and an immigration card showing that one Fernandes had been at the processing center for immigrants at Fort Chaffee, Arkansas. After giving the defendant Miranda warnings, Sanchez, who had been at Fort Chaffee, concluded from the defendant's answers to questions that the defendant had never been to Fort Chaffee. The defendant was returned to Massachusetts, indicted for murder on June 22, 1981, and convicted by a jury on November 18, 1981.

The evidence, including reasonable inferences from that evidence, was sufficient to permit a rational jury to find beyond a reasonable doubt that the defendant had committed murder in the first degree. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Circumstantial evidence is competent evidence to establish guilt. *Commonwealth* v. *Starling*, 382 Mass. 423, 425-427 (1981). *Commonwealth* v. *Belton*, 352 Mass. 263, 266-267, cert. denied, 389 U.S. 872 (1967). The Commonwealth need not prove that no one else could have committed the murder. *Commonwealth* v. *Casale*, 381 Mass. 167, 175-176 (1980). *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 55-56 (1975). In conjunction with other evidence, a jury may properly consider actions and statements of a defendant that show a consciousness of guilt. Conduct of this character includes making false statements to the police (*Commonwealth* v. *Basch*, 386 Mass. 620, 624-625 [1982]), the giving of a false alibi (*Commonwealth* v. *Connors*, 345 Mass. 102, 105 [1962]), extended flight, especially following questioning by the police (see *Commonwealth* v. *Montecalvo*, *supra* at 52), and giving a false name and identification when apprehended (see *Commonwealth* v. *Brown*, 354 Mass. 337, 347-348 [1968]).

On the evidence, it is obvious that the jury could find that the defendant and Burke were together alone in the Buono apartment shortly after midnight of December 4, 1980.

There was evidence that Burke had a roll of money and certain gold jewelry that were missing when his body was found. There was no evidence of a forced entry or of a scuffle. The jury could reasonably infer that the defendant deliberately fired a gun close to Burke's head while the victim was asleep or unconscious. Added to these facts are the defendant's statements to the police that the jury could reasonably infer were false, his flight, and his attempt to conceal his identity when arrested in Florida. These circumstances, no one of which alone would be enough to convict the defendant, combine to form a fabric of proof that was sufficient to warrant the jury's finding beyond a reasonable doubt that the defendant was the person who killed the victim.

It is true that not every inference that the jury could reasonably and possibly infer was compelled. But allowable inferences need not be necessary or inescapable. *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977). It is not conclusive in the defendant's favor that no gun was ever seen on him or found after the murder or that the stolen jewelry was not recovered. The fact that the defendant was the last person known to have seen Burke alive and that he had an opportunity to commit the crime would not be sufficient to warrant his conviction. See *Commonwealth* v. *Curtis,* 318 Mass. 584, 585 (1945). It is possible that after the defendant left the Buono apartment some third person came to the apartment and killed Burke. The jury were warranted, however, in rejecting that possibility and in concluding beyond a reasonable doubt that the defendant was the killer. *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 54-56 (1975).

The determination of guilt had a solid foundation in demonstrated facts and was not left to conjecture and surmise. If the defendant had not made false statements to the police, and had not presented a false alibi, and had not fled following questioning by the police, the question would have been a closer one. See *Commonwealth* v. *Curtis, supra.* [1]

---

[1] The defendant correctly makes no claim that consciousness of guilt evidence should be disregarded, or in some way discounted, in determin-

We see no justification, in the exercise of our duty under G. L. c. 278, § 33E, for ordering a new trial or for directing the entry of a verdict of guilty of a lesser crime. If the defendant committed the murder, as the jury were warranted in finding, neither the circumstances of the crime nor the defendant's circumstances call for a new trial or for any change in the verdict.

*Judgment affirmed.*

---

ing whether the evidence was sufficient to permit a rational jury to find guilt beyond a reasonable doubt. "While proof of mere consciousness of guilt alone may be insufficient to convict of crime, see *Commonwealth* v. *Montecalvo*, [367 Mass. 46, 52 (1975)], evidence of such a state of mind when coupled with other probable inferences, may be sufficient to amass the quantum of proof necessary to prove guilt. See *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980)." *Commonwealth* v. *Porter*, 384 Mass. 647, 653 (1981). See *Commonwealth* v. *Booker*, 386 Mass. 466, 470 (1982); *Commonwealth* v. *Smith*, 350 Mass. 600, 607 (1966) ("Evidence of consciousness of guilt, while not conclusive, may with other evidence be sufficient to prove guilt").