COMMONWEALTH vs. ANTONIO MAZZA.

Suffolk.  January 7, 1987. — March 10, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Homicide. Practice, Criminal*, Required finding.

Where, at a murder trial, the evidence at the close of the Commonwealth's
case-in-chief tended to prove only that the defendant and the victim
were rivals for the affection of the same woman; that the defendant had
been present at the place where the killing occurred; and that, after the
killing, the defendant engaged in conduct indicative of consciousness
of guilt, no rational trier of fact could conclude beyond a reasonable
doubt that the defendant killed the victim, and the defendant's motion
for a required finding of not guilty should have been allowed. [398-400]

INDICTMENT found and returned in the Superior Court De-
partment on June 25, 1982.

The case was tried before *Robert A. Barton*, J.

*Joseph J. Balliro* for the defendant.

*Judy G. Zeprun*, Assistant District Attorney (*Paul Connolly*,
Assistant District Attorney, with her) for the Commonwealth.

NOLAN, J.  The defendant, Antonio Mazza, appeals from
his conviction of the murder in the first degree of Russell
Edward Griffin. The defendant argues that the trial judge should
have allowed his motion for a required finding of not guilty.
We agree with the defendant and reverse the conviction.

We recite the evidence in the light most favorable to the
Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594,
595 (1985). We consider the evidence at the close of the Com-
monwealth's case. See *Commonwealth* v. *Kelley*, 370 Mass.
147, 150 n.1 (1976). Further, we assume, without deciding,
that all questions concerning the admissibility of evidence
would be resolved in favor of the Commonwealth.

*The crime*. On Sunday, April 11, 1982, at approximately 4
P.M., the defendant arrived at the home of one of his friends,

one Joseph Mongiello. The defendant made two telephone calls,[1] and then asked Mongiello for a ride. The two men left Mongiello's home at approximately 4:45 P.M. The defendant told Mongiello to drive "to Dorchester . . . Ho Jo's." The two men arrived at the Howard Johnson restaurant off the Southeast Expressway twenty to twenty-five minutes later. Mongiello's vehicle needed gasoline and he drove into the Arco station which was adjacent to Howard Johnson's. While Mongiello was filling the tank, the defendant walked over to the Howard Johnson parking lot. The defendant returned in approximately one and half minutes. He told Mongiello, "There's a problem." The two men left and drove back to Mongiello's home in Medford.

The victim's employer, one Richard Kravetz, received a telephone call from the victim at approximately 4:45 P.M. As a result, Kravetz went first to the Howard Johnson motel in Braintree, and then to the Howard Johnson restaurant in Dorchester, arriving at approximately 6:05 P.M. On arriving, Kravetz saw the victim's red Jeep vehicle. Kravetz walked by the Jeep, but he did not see the victim. He walked into the restaurant. Again, he did not see the victim. Kravetz walked backed to the Jeep, looked inside, and saw the victim lying face down. The victim was covered with blood. Kravetz called the police. The police received the call at 6:20 P.M. An emergency medical technician arrived first. He concluded that the victim was clinically dead. Police arrived at approximately 6:30 P.M. The police found two spent shells, apparently .45 caliber, and a spent .45 bullet.

*Evidence Bearing on the Defendant's Guilt.*

1. *Motive.* The Commonwealth presented evidence that the defendant and the victim were both interested in the same young woman.[2] The woman worked with the victim at Jason's

---

[1] One telephone call was to directory assistance. The jury could have inferred the second call was to the victim. During the second call Mongiello heard the defendant say he was concerned that a certain woman whom both he and victim dated was going to commit suicide. See *infra* at 398.

[2] The Commonwealth suggests that the defendant's infatuation with the young woman was the motive for the homicide.

restaurant. On April 10, 1982, Saturday, the defendant had told the woman that he had attended a party on the evening before and he had seen the victim there with another woman. He told the young woman that the victim was a "low life" who deserved to die, and that she "did not deserve to be treated like this." He drove the young woman to the home of his friend, James Mongiello. At Mongiello's home, he borrowed Mongiello's white Cadillac automobile and left his own automobile.

The defendant then drove the young woman to Waterville, New Hampshire. During the ride and at dinner the defendant gave the young woman cocaine and alcohol. The defendant suggested that they stay overnight. During the evening the defendant sexually assaulted the woman.[3] She left the room. In the morning the defendant drove the woman to a restaurant. She was crying. The defendant hit her, and again said the victim "was a low life" and "look what he's done to you." The woman sought help from the restaurant manager, who arranged a ride home to Boston for her.[4]

2. *Consciousness of guilt.* On the day of the homicide, about 6 P.M., a police officer in East Boston saw a fire behind the Liberty Market. The defendant's car was parked near the fire with the driver's door open, and the defendant was about ten feet from the fire. The defendant motioned as if he were zipping his pants and told the police officer he had been urinating. The police officer sent the defendant on his way and pulled a scalley-type cap from the fire. The following night, Monday, April 12, a detective found a blue scalley cap and a pair of wet jeans behind the Liberty Market and brought them to the Boston police crime laboratory.[5]

---

[3] The Commonwealth argues, without any support in the record, that, as a result of the assault, the defendant was in fear of the victim.

[4] The woman was scheduled to work for Jason's that evening. She did not appear for work.

[5] The laboratory criminalist found burns and mammalian blood stains on the cap. He could not identify the blood species or type. There were no burns or blood stains on the jeans.

After the murder, the defendant shaved off his mustache, dyed his hair a darker color, and fled to Vermont.[6] Although he was generally known as "Tony Ramo," after the homicide he used his legal name, Antonio Mazza.

3. *Discussion.* What can be pieced together from the evidence concerning the crime is that the defendant called someone, inferentially the victim, Griffin, over the possibility of the young woman's suicide. The victim, in turn, called his and the woman's employer, Kravetz. The three men all went to the Howard Johnson restaurant in Dorchester. The victim's car was not observed at the scene prior to 5:50 P.M. There is no evidence that the victim brought a gun.[7] There is no evidence that the defendant had a gun on his person that day. No shots were heard.[8] There were no fingerprints or other evidence connecting the defendant to the homicide. The defendant was out of Mongiello's sight only as long as "it takes to put twenty dollars' worth of gas in" an automobile tank.

The issue then is whether the defendant's presence at the scene of the crime together with the evidence of motive and consciousness of guilt is sufficient to withstand the defendant's motion for required finding of not guilty. We conclude it is not.

In reviewing the denial of a motion for a required finding of not guilty, we consider whether "the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). "[The] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985), quoting *Commonwealth* v. *Latimore*, 378

---

[6] When arrested, the defendant had $6,000 in cash which, he said, came from the sale of his motor vehicle. He said that the agreement for that sale predated the homicide.

[7] The victim had a license to carry a gun and owned a gun. That gun was found in his home.

[8] There was evidence that at least one wound resulted from a "contact" shot. A contact shot muffles sound.

Mass. 671, 677 (1979). "Thus, to sustain the denial of a directed verdict, it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979).

We recognize that "[i]n order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime." *Salemme, supra* at 601, quoting *Commonwealth* v. *Fancy,* 349 Mass. 196, 200 (1965). Even so, we conclude that this verdict cannot stand. No rational trier of fact could conclude beyond a reasonable doubt that the defendant killed Griffin. See *Salemme, supra* at 599. The evidence failed to identify the defendant as the perpetrator. Mongiello's testimony indicates that the defendant was in the Howard Johnson parking lot about the time Griffin's body was found. However, Mongiello did not see Griffin's Jeep nor did he see the defendant with a gun. Although Mongiello conceded that the defendant could have concealed a weapon, he also testified that the defendant was calm and composed when he returned to Mongiello's car at the Arco station. In addition, because the medical examiner could not establish the time of death, there is no evidence that Griffin was killed while the defendant was at the restaurant.

A fair inference may be drawn that the defendant called the victim from Mongiello's home and arranged to meet him at the Howard Johnson restaurant in Dorchester. The Commonwealth argues that, from this inference, we may further infer that the defendant went to Howard Johnson's with a gun and killed the victim. We are not permitted to pile inference upon inference. *Commonwealth* v. *Ferguson,* 384 Mass. 13, 18 (1981). Furthermore, mere presence at the scene of a crime, without more, is not sufficient to support a conviction. *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980). In these circumstances, the Commonwealth's case rests on impermissible conjecture or surmise. See *Salemme, supra* at 599-600.

The evidence of motive and consciousness of guilt cannot obscure the fact that the Commonwealth's proof failed. No rational trier of fact could find, beyond a reasonable doubt, what the defendant did while he was out of the view of Mongiello at the Arco station. While actions and statements that indicate consciousness of guilt may be sufficient to prove guilt when considered with other evidence, the evidence in this case, taken as a whole, is not sufficient to sustain the verdict. *Salemme, supra* at 602.

The judgment of conviction is reversed, the verdict set aside, and the case remanded to the Superior Court for entry of judgment of acquittal.

*So ordered.*