COMMONWEALTH vs. MELISSA JO CORDLE.

Barnstable. January 3, 1989. — April 26, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal,* Required finding, Instructions to jury. *Evidence,* Other offense, State of mind.

At the trial of indictments for first degree murder and for burglary, the Commonwealth presented sufficient evidence to warrant submission of the cases to the jury. [738-742] LIACOS, J., dissenting.

The judge at a murder trial at which the circumstantial evidence of the defendant's guilt was not overwhelming should have instructed the jury that mere opportunity for the defendant to commit the crimes was not sufficient to establish guilt; moreover, it was incorrect for the judge to emphasize the importance of the Commonwealth's proof of the defendant's being present near the scene of the crimes, with the result that a new trial was required. [742-743]

At a criminal trial, the arresting police officer's testimony that "as a result of" certain conversations the defendant was arrested and charged with breaking and entering in the nighttime and malicious destruction of personal property, did not constitute inadmissible hearsay. [743-744]

Evidence at a murder trial that, almost three weeks before the murders were committed in the home of one of the victims, the defendant broke into the victim's home and caused property damage, was properly admitted to show the defendant's motive and state of mind, to show the entire relationship between the victim and the defendant, and to aid in the identification of the murderer. [744]

INDICTMENTS found and returned in the Superior Court Department on June 25, 1985.

The cases were tried before *Francis W. Keating,* J.

*Bruce Ferg (Joseph M. Young* with him) for the defendant.

*Michael D. O'Keefe,* Assistant District Attorney *(Julia K. Vermynck,* Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. The defendant, Melissa Jo Cordle, appeals from her convictions for the murders in the first degree of Ralph Anderson and Frances Schiappa, and from her conviction for

burglary. The defendant argues that the judge should have allowed her motions for required findings of not guilty. She also argues that, even if the evidence was sufficient to sustain the verdicts, the judge erred in failing to instruct the jurors that mere presence at the scene was insufficient to establish guilt and that a new trial therefore is required. We conclude that the evidence is sufficient to support the jury's verdicts, but that the judge's jury instructions require us to reverse and remand for a new trial.

We consider the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). The jury could have found the following facts. Ralph Anderson and a woman named Frances Schiappa were murdered in Anderson's cottage at 74 Town Neck Road in Sandwich. The murders occurred sometime between midnight and 4:30 A.M. on the morning of June 15, 1985. Anderson died as a result of a gunshot wound to his neck; Schiappa died as a result of a gunshot wound to her head, smoke inhalation, and thermal injury. The cottage burned that morning, and fire fighters found the charred bodies of Anderson and Schiappa on the floor of Anderson's bedroom.

The defendant had been involved in a romantic relationship with Ralph Anderson for seven years or more. The relationship deteriorated, however, to the point where the defendant pleaded with Anderson just to meet with her. The defendant sent Anderson a series of letters asking over and over for an attempt at reconciliation. In one she wrote, "I love you, Ralph. There would be no trouble if you would just see me a little, honey. I beg you not to do this. You'r[e] driving me crazy." In another letter, dated November 19-23, she wrote, "I'm begging you to just talk to me. It will never be over with us." In a note dated November 21, she wrote, "You better not see her. I'll be around watching." During February, March, April, May, and June of 1985, the defendant called Anderson many times, at all hours of the day and night. Many of the telephone calls were for a minute or less.

On November 14, 1984, the defendant kept following Anderson. After speaking to the defendant in her automobile, Ander-

son went to the home of his friend, Barbara Manning. Once inside, Anderson, who seemed upset, called the police. When Anderson and Manning began to drive away in Anderson's automobile, the defendant started to follow them. Anderson therefore drove to the Sandwich police station. As a result of Anderson's visit to the police station, Officer Peter Howell searched for the defendant and located her in a nearby laundromat parking lot. The defendant looked sad. After the officer advised the defendant of her Miranda rights, the defendant admitted that she had been following Anderson and that she had threatened to kill him. She said that she only made the threat because she was angry. She stated that she loved Anderson, and would never kill him.

In December of 1984 or January of 1985, during a conversation about problems with local teenagers breaking into houses, the defendant told a Brockton neighbor that she had a gun. The neighbor assumed that the defendant meant a "BB gun" which the neighbor had once noticed in the defendant's house. The neighbor later told a police officer that she was concerned because the defendant seemed depressed and might be prone to kill herself.

On May 28, 1985, at approximately 11:30 P.M., the defendant stood outside in the street as Anderson went into the house of his neighbor, Paula Butler, and used her telephone. As a result of the telephone call, two police officers went to investigate the situation at Anderson's cottage. Officer James Foley noticed that a small metal telephone junction box at the back of the cottage was broken: the box was hanging down and was not securely fastened to the wall. A nearby window was broken. The porch door was damaged. The side door was damaged and had elongated splinters of wood still clinging to the lock, which was in a locked position. By the time the officer arrived, Anderson and the defendant were sitting in Anderson's kitchen. The defendant had a large gash on the bottom of her left foot, which she later admitted was caused by her kicking the telephone box. Anderson was upset to the point of tears, and had a conversation with the officer. The officer then arrested the defendant for breaking and entering in the nighttime and mali-

cious destruction of personal property. The defendant was never prosecuted for these crimes.

On Friday, June 14, 1985, the day before the murder, the defendant borrowed an automobile from Exoticar Incorporated because her own automobile was being repaired. The automobile she borrowed was a 1976 Chevrolet Nova, with the Massachusetts registration number 660-NIJ. The defendant spent the day with her friend, Doris Stohl. Toward the end of the day, they went to a local bar, where the defendant called Anderson's home at approximately 5 P.M. The defendant spoke to both Schiappa and Anderson. Afterward, the defendant decided to spend the evening at Stohl's house in Weymouth. The defendant planned to play golf the next morning, and the golf course was fifteen to twenty miles from the defendant's home, but only three miles from Stohl's home. Stohl's home was approximately 44.7 miles from Anderson's cottage in Sandwich. Stohl last saw the defendant when Stohl went to sleep at 11:30 P.M. Although Stohl woke up during the night, she did not notice if the defendant was still there.

In Sandwich, on the same evening, Martin Raftery, a friend of Anderson's, saw Anderson and Schiappa at a local restaurant called The Good Times. Rafferty saw Anderson and Schiappa drink, but did not see them eat. Anderson and Schiappa left The Good Times between 12 and 12:30 A.M.

At approximately 1 A.M. on Saturday, June 15, 1985, a young man named Shawn Morrissey went to visit his girl friend, Robin Spoffard, who lived at 44 Town Neck Road, three houses away from Anderson's cottage. Morrissey went to speak to Spoffard at her bedroom window which faced Town Neck Road. Ten minutes after they started to talk, they noticed an automobile which time after time went slowly on Town Neck Road, coming past them from both directions. Spoffard suggested that they follow the suspicious automobile. She climbed out of her window and entered Morrissey's automobile. The couple followed the automobile through the streets of Sandwich to Coast Guard Road. Morrissey wrote down the automobile's registration number with eyeliner on the back of an envelope: the number was 660-NIJ. The couple

followed the automobile to a parking lot which faced Cape Cod Canal. In the parking lot, Morrissey shined his automobile's headlights directly at the automobile's driver. At separate photographic lineups, both Morrissey and Spoffard identified the automobile's driver as the defendant. After five minutes, the defendant drove out of the lot, and the couple followed her back to Town Neck Road. The defendant drove off down the street, and neither Morrissey nor Spoffard saw her again that evening. Morrissey returned Spoffard to her home at about 2:30 A.M.

At about 3:30 A.M., another young man named Dennis Parker, returning with his girl friend from Boston, noticed a house with smoke coming out of it, but thought the smoke came from a fireplace. The couple went to the beach to watch the sunrise. When they passed the house again at about 4 A.M., they noticed flames toward the back of the door. Parker went to the house. He could not get in the front door because it was locked. The side door opened with no resistance. Parker went in and yelled. Hearing no response, he left because of the smoke and the heat of the flames.

The door through which Parker entered had been broken. A rectangular block of the door frame had been ripped away from its usual place and was attached to the lock. The telephone wire, which led to the junction box damaged by the defendant on May 28, was cleanly cut, although the junction box itself was securely attached to the wall. The television antenna wire at the front of the house also had been cut. Fire fighters found the badly burned body of Anderson approximately three feet inside his bedroom door. They found Schiappa's body across the bedroom on the other side of the bed. They removed the bodies to the kitchen. Anderson's wallet and Schiappa's purse were found in the cottage, without any money in them. A duplicate copy of Anderson's motor vehicle registration was found in Anderson's bureau. Anderson had applied for this duplicate in March, 1985, explaining in his application that he had lost the original.

Later that morning, between 6:45 and 7 A.M., in the Stohls' house in Weymouth, the defendant was dressed and seated in

the kitchen. Donald Stohl, Doris Stohl's husband, was surprised to see the defendant because he did not know that she stayed overnight, and because this was the only time, of all the times she had stayed over, that she was awake, dressed, and sitting in the kitchen when he woke up. The defendant woke Doris Stohl at 7 A.M. The defendant had never gone into Doris Stohl's room and awakened her at 7 A.M. in all the times she had stayed over.

The afternoon following the murder, between 3:30 and 4 P.M., Carol Tofanelli, a neighbor of the defendant in Brockton, informed the defendant that police detectives were looking for her. A few minutes later, the defendant left her own home and placed a bag in her garbage barrel and a shopping bag in her automobile, before driving off. Detectives later found Anderson's original registration at the top of the garbage bag the defendant had thrown out.

That night, in the defendant's parents' house in Quincy, the police told the defendant about the murder of Anderson and Schiappa. The defendant seemed surprised by Anderson's death. She claimed that the last time she had seen Anderson was June 10, 1985. She stated that she had not been in Sandwich for over a week, since May 28, 1985, when she had been arrested at Anderson's cottage. She maintained that she had spent the whole night of June 14 to June 15 at the Stohls' house, had given no one the keys to her automobile, and had found the automobile in the same spot in the morning that she had left it the night before. Even after being told that someone had spotted her in Sandwich the previous evening, she still denied that she had left the Stohls' home at any point during the evening.

1. *Sufficiency of the evidence.* In reviewing the denial of the defendant's motions for required findings of not guilty, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). See Mass. R. Crim. P.

25 (*a*), 378 Mass. 896 (1979). We consider "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.'" *Commonwealth* v. *Clary*, 388 Mass. 583, 588 (1983), quoting *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445 (1933). "The inferences cannot be too remote but 'allowable inferences need not be necessary or inescapable.'" *Commonwealth* v. *Lanoue*, 392 Mass. 583, 589-590 (1984), quoting *Commonwealth* v. *Rojas*, 388 Mass. 626, 630 (1983). We conclude that the Commonwealth presented sufficient evidence to warrant submitting the issue of the defendant's culpability to the jury.

The Commonwealth presented compelling evidence of the defendant's obsession with the victims and her threats against them. The jury was justified in concluding not only that the defendant bore ill will toward the victims, but also that she had begun physically to harass Anderson over a period of eight months, and did so violently a few weeks before the murders. We recognize that evidence of ill will without more is not sufficient to submit the case to a jury. *Commonwealth* v. *Abbott*, 130 Mass. 472, 475 (1850). Nevertheless, there is more evidence in this case: there is evidence of a pattern of harassment, and, as we discuss below, presence at the scene of the crime and consciousness of guilt. Evidence of prior threats, in conjunction with other evidence, may be enough to submit the case to a jury. See, e.g., *People* v. *Edelbacher*, 47 Cal. 3d 983 (1989). *Crawford* v. *State*, 257 Ga. 681 (1987).

The Commonwealth presented evidence that the defendant was present near the scene of the crime at about the time of the murders. She was there in the early morning, driving back and forth on Town Neck Road in a suspicious manner. The jury could infer that she did not tell the Stohls where she was going that evening, and drove the 44.7 miles to Sandwich surreptitiously, in the middle of the night.

The Commonwealth's evidence also indicates that the defendant broke Anderson's telephone box and his side door on May 28. For the following reasons, this evidence justifies an inference that the defendant cut the telephone wire and broke through the side door on the morning of the murder. On May 28, the defendant broke down the telephone junction box, broke the door, and broke into Anderson's cottage. On that occasion, Anderson went to use Paula Butler's telephone. On the morning of the murder, telephone communication was destroyed at the cottage by cutting the telephone wire above the junction box; and the side door was broken. "Although the circumstances of the two offenses were not identical, we think they were sufficiently similar to justify the inference that they were the product of the same mind." *Commonwealth* v. *Bettencourt*, 20 Mass. App. Ct. 923, 925 (1985). In *Bettencourt*, the fact that the defendant broke into a house six years previously, and broke the window later to create a false impression that the culprit entered through the window, was sufficiently similar to a break-in during which the culprit cut the window's screen to create a false impression that the culprit had entered through the window. *Id.* Here, the two incidents occurred within a short time of one another, and the defendant was in the area at about the time the second incident occurred. We therefore think that the two incidents are so close in time and sufficiently similar as to justify the admission of the evidence and the jurors' inference in favor of the Commonwealth. Cf. *Commonwealth* v. *Key*, 21 Mass. App. Ct. 293, 297 (1985) (one incident could not serve as a factor to identify the perpetrator of another where the only similarity between incidents was the location and sexual nature of the offense).

Therefore, the jury was justified in inferring that, not only was the defendant on Town Neck Road, acting in a suspicious manner, that morning, but also that, about the time of the murder, she broke into the cottage where the victims were found. This case thus is factually close to *Commonwealth* v. *Anderson*, 396 Mass. 306 (1985). In *Anderson*, the evidence that the victim and the defendant were alone together at about the time of the murder, in addition to other evidence, was suf-

ficient to sustain the jury's verdict. *Id.* at 312-313. See also *Commonwealth* v. *Rojas, supra* at 630 (fact that victim was together with the defendant in a locked room at the time of the murder, along with other evidence, was sufficient to sustain the verdict). While there was evidence of the presence of a gun in *Anderson,* and no such evidence in the case before us, "[i]t is not conclusive in the defendant's favor that no gun was ever seen on h[er] or found after the murder." *Rojas, supra* at 630.

The defendant lied about her presence in Sandwich the morning of the murder. She acted oddly the morning after the murder by being awake and dressed early at the Stohls' house, and by waking Doris Stohl at 7 A.M. Although "a defendant may not be convicted solely on the basis of consciousness of guilt evidence," *Commonwealth* v. *Salemme,* 395 Mass. 594, 602 (1985), "evidence of such a state of mind when coupled with other probable inferences, may be sufficient to amass the quantum of proof necessary to prove guilt." *Commonwealth* v. *Rojas, supra* at 630 n.1.

The defendant relies on *Commonwealth* v. *Mazza,* 399 Mass. 395 (1987), for the proposition that the evidence is insufficient to support a jury verdict of guilty in her case. The defendant's reliance is misplaced. In *Mazza,* the evidence of motive and threats was less compelling. There was no evidence of a pattern of obsession, ill will, and violence as there is in this case. In *Mazza,* the defendant was in the area of the murder for a relatively short time. Further, there was no evidence in *Mazza* comparable to the cut wire and broken door in this case which tend to identify the defendant as the culprit who broke into the house the morning of the murders.

The circumstances of this case, "no one of which alone would be enough to convict the defendant, combine to form a fabric of proof that was sufficient to warrant the jury's finding beyond a reasonable doubt that the defendant was the person who killed the victim[s]." *Commonwealth* v. *Rojas, supra* at 630. "Here, the jury had sufficient evidence . . . to draw plausible inferences that the defendant was present at the time of the shooting, had a motive for the killing[s], . . . [and] evi-

denc[ed] a consciousness of h[er] guilt. The evidence was substantial enough so that the question of guilt was not left to conjecture or surmise. . . . We find no error in the judge's denial of the motions for a required finding of not guilty." *Commonwealth* v. *Anderson, supra* at 313.

2. *Jury instruction on opportunity.* The defendant argues that the judge erred by failing to instruct the jury that evidence of the defendant's presence at the scene of the crime alone is insufficient to convict the defendant. She argues that this error was exacerbated by the judge's later statement that "one of the most important issues is the identification of this defendant as *being present at the scene*" (emphasis supplied).[1] We agree with the defendant's arguments.

"Evidence which does not go beyond showing that the defendant had an opportunity to commit the crime is insufficient." *Commonwealth* v. *Salemme, supra* at 601, quoting *Commonwealth* v. *Curtis*, 318 Mass. 584, 585 (1945). See *Commonwealth* v. *Rojas, supra* at 630 ("The fact that the defendant was the last person known to have seen [the victim] alive and that he had an opportunity to commit the crime would not be sufficient to warrant his conviction"). A judge is not required to instruct the jury on each fact and possible inference. See *Commonwealth* v. *Silva*, 388 Mass. 495, 507 (1983). However, in light of the closeness of the evidence, the judge should have instructed the jury that presence alone was insufficient to establish guilt. The judge's emphasis on the proof of the defendant's being present near the scene of the crime may have misled the jury to think that the defendant's proximity to the scene of the crime alone could be the basis of a verdict of guilt.

---

[1] The defendant's requested instruction on presence at the scene read: "Even if you feel that the defendant was present in the area at which the alleged crime was committed that fact is not enough to establish guilt. Mere presence at the scene of a crime is clearly and absolutely insufficient to establish guilt beyond a reasonable doubt." The defendant objected at the end of the instructions to the failure of the judge to give the instruction or its substance. We note that the judge would have been well within his discretion in not giving this instruction as phrased. Although the defendant did not object to the judge's instruction concerning the importance of the identification of the defendant as being present at the scene of the crime, we can consider that instruction pursuant to G. L. c. 278, § 33E.

Further, the judge was incorrect as a practical matter in saying that the question whether the defendant was present near the scene of the murders was a serious issue for them to decide. In his closing argument, defense counsel conceded that the defendant had been present in Sandwich on the morning of the murder. He emphasized, however, that the judge would instruct the jury that presence at the scene of the crime alone is not sufficient to convict the defendant. When the judge informed the jury that the identification of the defendant as being at the scene of the crime was "one of the most important issues" in the case, and then failed to instruct the jury that mere opportunity to commit the crime was not enough, the jury may have been under the impression that, as long as the jurors believed beyond a reasonable doubt that the defendant was present in Sandwich that morning, they could convict her. Because the Commonwealth's circumstantial proof in this case was not overwhelming, we conclude that the judge's failure to give the substance of the requested instruction requires a new trial.

3. *Prior arrest.* We discuss the admissibility of evidence concerning the defendant's prior arrest because the issue is likely to recur at the new trial. On direct examination, Officer Foley testified that he talked to Anderson on the night of May 28. The prosecutor asked, "What ultimately happened, Officer Foley, to [the defendant] as a result of your conversations?" Officer Foley answered, "She was arrested." The prosecutor then asked, "What was she charged with?" Officer Foley answered, "Breaking and entering in the nighttime, malicious destruction of personal property."

The defendant argues that this testimony should not have been admitted because it let in hearsay "through the back door." We do not agree. As an initial matter, the officer's testimony clearly was not itself hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." McCormick, Evidence § 246 at 729 (3d ed. 1984). See P.J. Liacos, Massachusetts Evidence 262 (5th ed. 1981). No out-of-court statements were offered in this testimony. The

defendant has not cited to us any authority for the proposition that a witness may not testify as to actions taken in response to inadmissible hearsay. Further, the officer's action was not based solely on his conversation with Anderson. He himself was able to observe the broken window and doors, Anderson in tears, and the defendant in a chair in the kitchen with her shoe in her hand and a large gash on her foot.

The defendant argues that evidence concerning the May 28 break-in itself should not have been admitted, because it merely tended to smear the defendant's character. "In Massachusetts, evidence of other criminal behavior may not be admitted to prove the propensity of the accused to commit the indicted offense but it is admissible for other relevant probative purposes." *Commonwealth* v. *Gallison*, 383 Mass. 659, 672 (1981), citing *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973). The admission of such evidence generally is "a matter on which the opinion of the trial judge will be accepted on review except for palpable error." *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981).

The incident was illustrative of the defendant's feelings toward Anderson and was relevant to show "the 'entire relationship' between the victim and the defendant." *Commonwealth* v. *Drew*, 397 Mass. 65, 79 (1986). The evidence bore directly on the defendant's state of mind, see *Commonwealth* v. *Chalifoux*, *supra* at 816, and on the question of motive. Also, as we discussed above, the jury might have been aided in inferring that the defendant knew how to break into the defendant's home and sever his telephone connection. It was thus permissible to admit the evidence to aid in the identification of the perpetrator. See, e.g., *Commonwealth* v. *Lacy*, 371 Mass. 363, 366 (1976).

The judgments of the Superior Court are reversed, the verdicts set aside, and the case remanded for a new trial.

*So ordered.*

LIACOS, J. (dissenting). I cannot agree with the court's conclusion that the evidence in this case constituted evidence sufficient to withstand a motion for a required finding of not guilty. The court has recited the evidence at length, and I shall not repeat the facts except as necessary to make my position clear.

In reviewing the denial of the defendant's motions for required findings of not guilty, we must consider whether "the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). "[The] question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). Commonwealth v. Salemme, 395 Mass. 594, 595 (1985), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "Thus, to sustain the denial of a directed verdict, it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." Commonwealth v. Latimore, supra at 677-678.

The most the jury could find from the evidence is this: Because of her jealousy, the defendant bore a great deal of ill will toward the victims, particularly Anderson. The defendant once threatened to kill Anderson explicitly and, on several other occasions, made veiled references to possible violence. The defendant had access to a gun, perhaps only a BB gun. In any event, no gun belonging to the defendant was shown to be connected to the murder. Over two weeks before the murder, the defendant broke into Anderson's cottage. During the early morning of the murder, the defendant was seen in her automobile outside Anderson's home. The defendant acted unexpectedly by being awake and dressed at 7 o'clock that morning. The evening after the murder, the defendant lied to the police about her presence in Sandwich, thus possibly showing consciousness of guilt. Further, she threw out a piece of evi-

dence linking her to Anderson after she had been told that detectives were looking for her but before she had been told that Anderson was dead.

The precedent set by *Commonwealth* v. *Mazza*, 399 Mass. 395 (1987), compels the conclusion that there was insufficient evidence to sustain the jury's verdict. The evidence incriminating the defendant in *Mazza* was stronger. In *Mazza*, there was evidence that the defendant and the victim were rivals for the affection of a young woman. The day before the murder, the defendant told the woman that the victim was a "low life" who deserved to die. Later in the evening, he sexually assaulted the woman. The morning of the murder, he hit the woman, who was crying, and again called the victim a "low life" and told the woman, "look what he's done to you." *Id.* at 397. There was evidence that the defendant called the victim within two hours of the murder, asking the victim to meet him in the parking lot where the victim was found shot. After five minutes alone in the parking lot, the defendant returned to the automobile of the companion who drove him to the lot, saying, "There's a problem." *Id.* at 396. After the murder, the defendant exhibited a strong consciousness of guilt. He partially burned the clothes he wore the night of the murder, and the clothes were determined to have some type of blood on them. He shaved his moustache, dyed his hair, and fled to Vermont. *Id.* at 397.

We ruled in *Mazza* that "[n]o rational trier of fact could conclude beyond a reasonable doubt that the defendant killed [the victim] . . . . The evidence failed to identify the defendant as the perpetrator." *Id.* at 399. We emphasized that, although the defendant was present in the area of the murder at about the time the murder occurred and shortly before the body was found, there was no proof that the defendant was actually at the scene when the victim was murdered. *Id.* The question in *Mazza* was "whether the defendant's presence at the scene of the crime together with the evidence of motive and consciousness of guilt [was] sufficient to withstand the defendant's motion for required finding of not guilty. We conclude[d] that it [was] not." *Id.* at 398.

Similarly, here, the Commonwealth has presented evidence that the defendant was in her automobile near the murder scene at the general time of the murders, along with evidence of motive and ill will, and consciousness of guilt. Indeed, no one saw the defendant outside her automobile on Town Neck Road the morning of the murder, much less inside the house. The Commonwealth presented no evidence of the murder weapon, no physical evidence such as fingerprints or gunpowder traces linking the defendant to the crime, and no evidence that the defendant set the fire. The evidence of consciousness of guilt is far less compelling here than in *Mazza.*

The Commonwealth claims that the present case is distinguishable from *Mazza* because of three pieces of evidence. First, the Commonwealth presented evidence of the defendant's obsession with the victims and threats against them. "[E]vidence of previous assaults and the threat . . . tended to show a settled ill will and hatred on the part of the defendant toward the [victim], and was evidence of a motive on [her] part to commit the crime." *Commonwealth* v. *Ramey,* 243 Mass. 394, 396 (1923). Evidence of threats, without more, however, is not sufficient to uphold a murder conviction. See *Commonwealth* v. *Abbott,* 130 Mass. 472, 475 (1881). In *Commonwealth* v. *Mazza, supra,* the defendant, in a violent state on the day before the murder, said that the victim deserved to die. That evidence was insufficient to sustain the Commonwealth's burden in *Mazza.* Similarly, the evidence of threats and prior abusiveness is insufficient to support the verdict here.

Next, the Commonwealth argues that the fact that the defendant broke Anderson's telephone box and his side door on May 28 serves as sufficient proof to identify the defendant as the person who cut the telephone wires and broke through the side door on the morning of the murder. In order to function as an identifying feature, a prior bad act must be "so unusual and distinctive as to be like a signature." McCormick, Evidence § 190, at 559 (3d ed. 1984). See, e.g., *Commonwealth* v. *Lacy,* 371 Mass. 363, 366 (1976); *Commonwealth* v. *Madyun,* 17 Mass. App. Ct. 965, 966 (1983). In the case at bar, the supposed identifying factor was the defendant's destruction of

telephone communication to Anderson's cottage and her breaking the door on one previous occasion. These factors are commonly found in break-ins and are not necessarily distinctive or unusual. See *United States* v. *Myers*, 550 F.2d 1036, 1046 (5th Cir. 1977). Cf. *Commonwealth* v. *Bettencourt*, 20 Mass. App. Ct. 923, 925 (1985) (defendant's prior conduct in making it appear falsely that someone tried to break through a window could serve as identifying factor). Further, the circumstances of the two break-ins differ in several important respects. On May 28, the defendant damaged many parts of the house, including a window, a door's window, and the side door; she broke the telephone junction box so that it hung down off the wall; there is no evidence that any wires were cut. At the time of the murder, only the side door was damaged; the junction box was still affixed to the wall, but the wire was cleanly cut; and the television wire at the front of the house also was cut. A marked difference in circumstances prevents the original episode from functioning as an identifying factor. See *Commonwealth* v. *Key*, 21 Mass. App. Ct. 293, 297 (1985).

Finally, the Commonwealth argues that, because the defendant threw away Anderson's registration after she was told that detectives wanted to see her, but before she was told that Anderson was dead, the jury could infer that she already knew about the murder. Both the court and I consider this unpersuasive. The defendant was arrested for an incident at Anderson's home two weeks before the murder. It was natural on her part to assume that, if detectives wished to talk with her, it had to do with Anderson. There is thus no basis for the jury to conclude from the fact that the defendant threw away Anderson's registration that she knew about the murder because she had murdered him. When evidence tends equally to support the conclusion that the defendant was innocent, such evidence cannot be said to have established the defendant's guilt by legitimate proof. See *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965).[1]

---

[1] The Commonwealth relies on *Commonwealth* v. *Anderson*, 396 Mass. 306 (1985), for the proposition that the evidence was sufficient to support the jury's verdict. While the facts of *Anderson* bear some similarity to both

While we recognize that, "[i]n order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime," *Commonwealth* v. *Salemme*, 395 Mass. 594, 601 (1985), quoting *Commonwealth* v. *Fancy, supra,* "the evidence in this case, taken as a whole, is not sufficient to sustain the verdict," *Commonwealth* v. *Mazza*, 399 Mass. 395, 400 (1987). "The Commonwealth's theory of [the] case requires piling inference upon inference." *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981). This we are not permitted to do. See *Mazza, supra* at 399. I dissent.

the facts of this case and those of *Commonwealth* v. *Mazza, supra,* they contain a crucial difference. In *Anderson,* there was evidence that the defendant was present with the victim at the murder scene during the time the murder could have been committed, with no one else around, and that the murder weapon was in the building and the defendant knew the location of the murder weapon.